turn over to him at a certain time. The issuing of the certificate was not a sale of the stock, or an agreement to sell it because the Trust Company did not own it, and did not pretend to own or sell it, and the certificate was issued only to the owner himself. An agreement by a bailee to give back to a man his own stock is neither a sale nor a transfer of the stock. Except for convenience and as evidence of the amount of stock which each vendor owned and was entitled to have turned over to him, there was no occasion for any certificate at all. If the owner and holder of the certificate should transfer it, then, of course, there would be a transfer of the stock, and the right to its delivery and such transfer of the certificate would be taxable. That question, however, is not involved. Nor is the future question which may arise as to whether or not the stock will be taxable when finally passed over to the owners by the Trust Company at the end of the five-year period. The sole question here is whether the issuing of the certificate by the Trust Company, which amounted to a mere receipt showing the rights of the parties, was in any sense a sale or transfer of stock within the meaning of the Tax Law. I think it was not, and that the judgment should be reversed, with costs.

---

SMITH v. FIRST NAT. BANK OF ALBANY et al.

(Supreme Court, Appellate Division, Third Department. May 8, 1912.)

1. PRINCIPAL AND SURETY (§ 169*)—RIGHTS OF PARTIES.

Where land owned by plaintiff and a third person engaged in a joint enterprise was pledged to defendant to secure an indebtedness due from them and to secure an individual indebtedness due from the third person, the court, in a suit in equity by plaintiff to compel defendant to apply the proceeds of the collateral to the exclusion of the indebtedness due from the third person individually, has jurisdiction of the subject-matter, and, where plaintiff expressly or impliedly authorized the third person to pledge the property to secure his individual debt, the court must decree that the third person's interest in the property and the collateral given by him to defendant must be exhausted before resort could be had to plaintiff's interest in the property because plaintiff was but a surety of the third person.

[Ed. Note.—For other cases, see Principal and Surety, Cent. Dig. §§ 474–489; Dec. Dig. § 169.*]

2. PRINCIPAL AND SURETY (§ 169*)—RIGHTS OF PARTIES.

While at law a surety will be compelled to pay the debt and look to the collaterals of his principal for indemnity, equity in the first instance will compel the creditor to resort to the securities in his hands where no substantial prejudice will result to him.

[Ed. Note.—For other cases, see Principal and Surety, Cent. Dig. §§ 474–489; Dec. Dig. § 169.*]

3. EQUITY (§. 39*)—JURISDICTION.

A court of equity obtaining jurisdiction of the parties and of the subject-matter will retain it and adapt its relief to the exigencies of the case, though it is impracticable to grant the specific equitable relief demanded.

[Ed. Note.—For other cases, see Equity, Cent. Dig. §§ 104–114; Dec. Dig. § 39.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes.

4. Joint Adventures (§ 7*)—Rights of Parties.

To determine whether a person engaged with another in a joint enterprise gave the latter apparent authority to pledge the property held jointly to secure a debt due from the latter individually, the surrounding circumstances may be shown, but the mere fact that they were engaged in a joint enterprise in timber lands did not make them such general partners as would give the latter authority to pledge joint enterprise property.

[Ed. Note.—For other cases, see Joint Adventures, Cent. Dig. § 8; Dec. Dig. § 7.*]

5. Evidence (§ 411*)—Parol Evidence—Admissibility.

Where a contract pledging property for the payment of a debt was not complete and did not purport to contain all of the contract, parol evidence was competent to show for what indebtedness the property was pledged.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 1874–1899; Dec. Dig. § 411.*]

6. Pledges (§ 53*)—Rights of Parties.

Where, in an action to compel defendant as pledgee to apply the proceeds of the collateral to the satisfaction of certain debts to the exclusion of others, the complaint alleged that specified property had been pledged to defendant to secure a debt due from plaintiff and a third person engaged in a joint enterprise, and that defendant claimed to hold the property for an individual indebtedness of the third person, an answer alleging the right of defendant to retain the collateral until a note due from plaintiff and the third person, as joint enterprise transaction, was paid, and that defendant had served on plaintiff a notice, a copy of which was attached, disclosing a claim of defendant to hold the collateral for various debts including the joint enterprise indebtedness, was sufficiently specific to permit defendant to show his right to hold the collateral as security for a debt due from the third person, individually, in the absence of any motion to make the answer more specific.

[Ed. Note.—For other cases, see Pledges, Cent. Dig. §§ 129–132; Dec. Dig. § 53.*]

7. Pledges (§ 53*)—Rights of Parties.

Where defendant and a third person, engaged in a joint enterprise, pledged joint enterprise property to defendant to secure a joint enterprise indebtedness, and defendant asserted a right and threatened to apply the proceeds of plaintiff's interest in the joint enterprise property to the payment of an indebtedness due from the third person individually, plaintiff could sue in equity and compel defendant to apply to the payment of the third person's individual indebtedness collateral delivered by the third person to him.

[Ed. Note.—For other cases, see Pledges, Cent. Dig. §§ 129–132; Dec. Dig. § 53.*]

Appeal from Trial Term, Albany County.

Action by Frank G. Smith against the First National Bank of Albany, N. Y., and another. From a judgment of dismissal on the merits, plaintiff appeals. Reversed, and new trial granted.

Argued before SMITH, P. J., and KELLOGG, HOUGHTON, BETTS, and LYON, JJ.

Richard J. Donovan, for appellant.
James F. Tracey, for respondent First Nat. Bank of Albany.
George Lawyer, for respondent Patton.

*For other cases see same topic & § number in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

HOUGHTON, J.  The action is in equity to compel the defendant bank to apply the proceeds of certain collateral pledged by the plaintiff and the defendant Patton to the satisfaction of certain notes to the exclusion of certain other notes, and for an accounting.

The defendant Patton was a lumber merchant in the city of Albany, and a patron of the National Exchange Bank of that city, which subsequently became merged in defendant First National Bank. The plaintiff, who lived in the city of New York, and Patton, were engaged in certain joint enterprises in timber lands in certain of the Canadian provinces. In the latter part of the year 1902 or the fore part of the year 1903, all that remained of these joint enterprises was what is known as the Gaspereaux lands in Nova Scotia, in which the plaintiff and Patton held an equal interest. The plaintiff concedes that during the years 1902 and 1903 one note of $15,000 and another of $11,856.06 signed by Patton and himself, or by himself and indorsed by Patton, were discounted by the defendant bank or its predecessor, and that for them or their renewals the Gaspereaux property was pledged as collateral originally by deed, and later it would seem by stock of the Gaspereaux Company, a corporation, formed to take over the lands. The plaintiff also concedes that such collateral is properly held for certain advances made by the defendant bank on account of and for the benefit of the Gaspereaux property which the defendant claims amounted to the sum of $3,872.03. The defendant bank claims that the Gaspereaux property was pledged to secure the payment, not only of the foregoing, but also of notes then held by it of Patton and his wife, aggregating something over $27,000. The plaintiff's name does not appear on any of these latter notes, and the bank held, and still holds, other security as collateral to them which Patton or his wife had furnished. Negotiations for the discounting of the $15,000 note and $11,000 note and the pledging of the collateral therefor were had with the bank by Patton.

The defendant bank insists that the plaintiff either expressly authorized Patton to pledge his, the plaintiff's, interest, not only for their joint indebtedness, but also for Patton's individual indebtedness, or, if he did not go so far as that, he at least clothed Patton with sufficient apparent authority to authorize the bank to rely upon his having authority so to do, and that he is now estopped from asserting to the contrary. The plaintiff claims that he gave Patton no such authority, nor did he clothe him with any apparent authority of that character, and that his share of the collateral should not be applied to the payment of any individual indebtedness of Patton, but only to such indebtedness as related to their joint enterprise. The defendant bank entered into a contract for the sale of the Gaspereaux property for $80,000, about $50,000 of which has been paid, and it is assumed that the balance due on the contract is secure and may be treated as money. The aggregate of the joint enterprise indebtedness and of the Patton individual indebtedness with accumulated interest is in the neighborhood of $60,000, or $65,000, and, according to the bank's own claim, when the full amount for which the Gaspereaux property is contracted to be sold shall have been paid, there will confessedly be a surplus remaining to be divided between the plaintiff and Patton.

The court found in accordance with the contention of the defendant bank, that the collateral was pledged, not only for the joint indebtedness growing out of the joint enterprise of plaintiff and Patton, but also the prior indebtedness of Patton and his wife, and, all such indebtedness not having been fully paid, dismissed the plaintiff's complaint upon the merits.

[1] We are of opinion the learned trial court was in error in such dismissal. The action was in equity. The proper parties were before the court, and the court had jurisdiction of them and of the subject-matter in controversy, and the plaintiff was entitled at least, even if Patton was authorized to pledge the plaintiff's share of the Gaspereaux property for the payment of the individual notes of himself and wife, to have it decreed that Patton's half interest should be exhausted, as well as the other collateral given by Patton, before resort was had to his own interest in the Gaspereaux property. If the plaintiff was not interested in the $27,000 which Patton had individually borrowed prior to the discounting of the notes on the faith of the Gaspereaux property, and was not under obligation to pay any part of it, even though he authorized Patton to pledge his interest in the Gaspereaux property for its payment, the legal relation between the two would be that of principal and surety. In such a case the debt would be Patton's debt, and the plaintiff would be a surety, who had placed additional collateral with the defendant bank therefor.

[2] "At law a surety will be compelled to pay the debt and after that look to the collaterals of his principal for indemnity. But in equity, if there be circumstances from which it appears directly or by reasonable inference that substantial injury or prejudice will not result to the creditor by enforcement, in the first instance, of the surety's right, and have the debt paid from the principal's property, the surety may in the case of hardship compel the creditor to resort to the securities in the creditor's hands or under his control, the property of the principal, in satisfaction of the debt before coming upon him." Pingrey on Surety & Guaranty, § 149; Philadelphia & Reading R. R. Co. v. Little, 41 N. J. Eq. 519, 529, 7 Atl. 356; Ingalls & Stockman v. Morgan, 10 N. Y. 178; Wright v. Austin, 56 Barb. 13. No prejudice can result to the defendant bank from compelling it to realize upon the collateral security which it holds pledged by Patton for the various notes aggregating $27,000. Nor can injury or inconvenience result from compelling it to apply Patton's half of the surplus above the joint indebtedness received from the Gaspereaux property to the payment of such notes before resorting to the one-half belonging to the plaintiff.

[3] The whole situation being before the court, these matters should have been adjusted, for, when a court of equity has obtained jurisdiction of the parties and of the subject-matter of an action, it will retain it and adapt its relief to the exigencies of the case, even though it is impracticable to grant the specific equitable relief demanded. Valentine v. Richardt, 126 N. Y. 272, 27 N. E. 255; Mott v. Oppenheimer, 135 N. Y. 312, 31 N. E. 1097, 17 L. R. A. 409; Consolidated Fruit Jar Co. v. Wisner, 110 App. Div. 99, 97 N. Y. Supp. 52. Not

only will equity thus retain jurisdiction for the purpose of doing justice between the parties, but also for the purpose of avoiding a multiplicity of suits. Satterlee v. Kobbe, 173 N. Y. 91, 97, 65 N. E. 952. It is our purpose not to embarrass the retrial which we feel impelled to grant by any comment upon the merits of the controversy, except so far as it may be necessary to give our views with respect to certain questions of law which will arise thereon. Of course, if the plaintiff expressly authorized Patton to pledge his interest in the Gaspereaux property for Patton's individual debts to the bank as well as those arising out of their joint enterprise, that is an end of the matter, and the plaintiff will be entitled only to the relief above indicated. If he did not give such authority, then the question remains whether he clothed Patton with such apparent authority as justified the defendant bank in assuming that he had it and in acting on such assumption.

[4] For the purpose of ascertaining whether or not apparent authority was given, the learned trial court correctly ruled that all the surrounding circumstances might be shown. The plaintiff and Patton were not such general partners as gave the latter authority to pledge joint enterprise property, and, if any apparent authority existed, it did not flow from any general partnership relation.

[5] So, too, the court properly held that parol evidence was competent to show for what indebtedness the Gaspereaux property was pledged. The collateral notes on their face do not purport to contain all of the contract. One of the originals was signed by the plaintiff and Patton and the other by the plaintiff alone. The clause pledging the collateral for the payment of any other liabilities than the notes themselves reads in the original $11,000 note and in the original of the $15,000 note "claims held against ———," the space never having been filled in. Besides, the consideration was open to explanation. If the plaintiff had the benefit in any joint enterprise of the $27,000 or any part of it, that fact would have a bearing upon whether he permitted his half interest in the Gaspereaux property to be pledged for its payment. If he did not have the benefit of any part of it, then there would be less reason for his consenting to any such arrangement.

[6] While the answer of the defendant bank might have been more specific with respect to defendant's claim in regard to the various notes which it claimed the collateral was applicable to, we think its allegations taken in connection with the letter which is made a part of the answer and attached as "Exhibit A" are sufficient to permit proof of the entire situation. The statement in the letter is that the collateral is held for "various notes," including the two confessedly given in the joint enterprise. If the plaintiff had desired a more specific description of such notes, he could have called for a bill of particulars.

[7] Nor was the action prematurely brought, notwithstanding the fact that the bank had not chosen to apply the proceeds of the collateral to the full payment of the joint notes. It was asserting its right and threatening to apply the proceeds of plaintiff's half of the collateral to the payment of Patton's individual notes. The plaintiff

had a right to stop that, and compel the prior application of Patton's collateral.

It follows that the judgment should be reversed and a new trial granted, with costs to the appellant to abide the event. All concur; KELLOGG, J., in memorandum.

JOHN M. KELLOGG, J. I concur in all Justice HOUGHTON says, except with reference to the answer. I am satisfied the answer does not present the issue litigated. The complaint alleges the turning over to the defendant bank of certain securities and property to secure the so-called $15,000 note, that there was no authority to pledge it for other purposes, but that the bank claims to hold it for other indebtedness of Patton, that the bank had realized more than enough to pay the indebtedness intended to be secured, and had refused to return or account for the securities, and it prayed an accounting and that the plaintiff's interest in the property pledged be fixed.

The answer contains several denials, alleges that the collateral was intended to secure the so-called $11,000 note, and that there is $577.24 unpaid upon it, and that the defendant has the right to retain the collateral until such loan is paid. It then alleges that the defendant served upon the plaintiff a certain notice, a copy of which is attached to the answer, but which apparently is of no force as a pleading. The statements in the notice are not even alleged to be true. Apparently from the face of the pleadings the plaintiff would be entitled to the return of the securities mentioned in the complaint upon payment of the $577.24. In an action for an accounting, if the defendant held the security for other indebtedness, it was its duty to allege the facts. I think the alleged notice does not help out the answer, and that there is an absence of any allegations which justify the proof of other indebtedness for which the defendant claims to hold the collateral.