GRAHAM BROTHERS AKTIEBOLAG, Plaintiff, *v.* ST. PAUL FIRE AND MARINE INSURANCE COMPANY and Another, Defendants.

Supreme Court, New York County, June 15, 1926.

**Joint adventures — what constitutes — arrangement whereby plaintiff was to export merchandise from Sweden to America for sale by third party, and said party was to export from America to Sweden certain other merchandise for plaintiff to sell, is not such joint venture as constitutes third party plaintiff's general agent — insurance — marine insurance — plaintiff, holding insurance certificates issued under marine insurance policy payable after loss on surrender, on merchandise for which it had accepted drafts, is entitled to amount of certificates following loss — insurance company paid third party at its peril — fact that plaintiff began action after termination of one-year period limited by policy, no defense — plaintiff not estopped by reason of attempt to collect payment made to third party.**

An arrangement whereby the plaintiff was to export certain merchandise from Sweden to America for B. to sell, and B. was to export from America to Sweden certain other merchandise for plaintiff to sell, each to divide the profits and losses equally after drawing on each other for the amount of the cargo, is not such a joint venture as constituted B. the general agent of the plaintiff in the sense that a partner would be, particularly where it was the intention of the parties to leave the legal title to the property in the party who had advanced the money.

Accordingly, the plaintiff, which held insurance certificates under an open policy of marine insurance, payable on the surrender of said certificates after a loss, is entitled to the amount of said loss, notwithstanding that the defendant insurance company made payment to B. in the belief that he was plaintiff's agent to receive

**404** GRAHAM BROS. AKTIEBOLAG *v.* ST. PAUL F. & M. INS. CO.

Supreme Court, June, 1926.                    [Vol. 127

payment, since the plaintiff, having accepted drafts for the merchandise in question, became the legal owner thereof; said payment was made at the peril of the insurance carrier.

The fact that the action was not begun within the one-year period limited by the policy does not preclude plaintiff from relief, since the evidence shows that the loss occurred in March, 1919, that payment was demanded on behalf of the plaintiff on December 4, 1919, and that plaintiff was lulled into inactivity and induced to continue negotiations until more than the one-year period had elapsed. Nor is the plaintiff estopped by reason of the fact that upon ascertaining that B. had collected the money from the insurance company, it entered a protest, and after expressing surprise that the insurance company should pay any one other than the holder of the certificates, endeavored to make the best of the situation by demanding payment from B., particularly where it never acquiesced in the propriety of the payment.

MOTION by defendants for direction of verdict in action to recover on insurance certificates under an open policy, payable after loss.

*Gustave Lange, Jr.,* for the plaintiff.

*Bigham, Englar & Jones* [*Arthur W. Clement* and *Charles de la Vergne* of counsel], for the defendant insurance company.

*Hornblower, Miller & Garrison* [*George S. Hornblower* and *John C. Banser* of counsel], for the defendant Berg.

PROSKAUER, J.  The plaintiff held insurance certificates under an open policy payable after loss on surrender of the certificates. Loss occurred and was paid almost in its entirety to one Berg from whom the defendant took an indemnity agreement.  Defendant claims that payment to Berg was payment to the plaintiff.  The question is whether Berg was plaintiff's agent to receive payment.

Accepting Berg's testimony at its face value, he was to export from America to Sweden certain merchandise for the plaintiff to sell and plaintiff was to export from Sweden to America certain other merchandise for him to sell.  They were to divide profits and losses equally.  The financing was to be done (in Berg's words) in the following way: " If he exports a cargo of, say pulp to New York, he just draws on me, whatever the amount of this cargo is. If I export a cargo to Sweden, I draw for that amount on him. The amount of cost of course."

The particular merchandise here in question consisted of automobiles.  The plaintiff protested against the shipment of these automobiles as not within the joint venture, but finally accepted the drafts with the attached documents, including the insurance certificates.  It thus became the legal owner of the merchandise and of the right of action to the insurance.

Assuming, without deciding, that the arrangement between plaintiff and Berg was one of joint venture, it does not follow that Berg was the general agent of plaintiff in the sense that a

partner would be.   The intention was to leave the legal title to consigned property in that one of the joint adventurers who had advanced the money.   When Berg paid for the automobiles in America he owned them and held the documents representing them. When he drew on plaintiff for the cost with documents attached, he evidenced an agreement that plaintiff was to have title to the automobiles when it paid for them.   This passage of title was not inconsistent with the ultimate obligation to account for profit on resale.   Plaintiff was willing to take its chances as to profit or loss.   There is nothing to show that it ever agreed to take the hazard of paying for the automobiles without owning them.

Many cases contain dicta that a joint venture is the equivalent of a partnership.   They are all cases which adjudicated the rights of the joint adventurers *inter se* (*Forman* v. *Lumm*, 214 App. Div. 579; *Franken-Karch Corp.* v. *Castriotis*, 195 id. 529; *Kraemer* v. *World Wide Trading Co.*, Id. 305; *Vernon M. & P. Co.* v. *Joseph & Bros. Co.*, 212 id. 358; *Worms* v. *Lake*, 198 id. 776; *Kent* v. *Universal Film Mfg. Co.*, 200 id. 539; *Stoller* v. *Franken*, 171 id. 327; *Hill* v. *Curtis*, 154 id. 662; *Mitchell* v. *Tonkin*, 109 id. 165; *Burkardt* v. *Walsh*, 49 id. 634; *O'Hara* v. *Harman*, 14 id. 167; *May* v. *Hettrick Bros. Co.*, 181 id. 3; *China & Japan Trading Co.* v. *Provand*, 155 id. 171; *Weldon* v. *Brown*, 84 id. 482; *Rice* v. *Peters*, 128 id. 776) or related to commitment clearly contemplated by the agreement of joint venture.   (*Thacke* v. *Hernsheim*, 115 N. Y. Supp. 216.) The distinction is thus indicated in 33 Harvard Law Review, 854: " Mutual agency of partners is an established necessary incident of a partnership   *   *   *.   In a joint adventure, however, there is no question as to the relation of several individuals to a distinct entity, but merely of the relation of several individuals *inter se;* and obviously, to find that one is agent of the other, we should find that authority so to act was given by that other by agreement, express or implied."

COTTON, L. J., in *Badeley* v. *Consolidated Bank* (38 L. R. Ch. 238, 249) writes: " All agree that what you must look at is whether the relation of principal and agent existed, a participation in profits not necessarily constituting a partnership, but being a matter which is to be considered, and which may be conclusive if there is nothing else to prevent there being a partnership.   *   *   *   When the participation in profits arises from a clause in an agreement entered into between the parties, it is wrong to say that this is *prima facie* evidence of a partnership, because you must look not only to that stipulation, but to all the other stipulations in the contract, and determine whether on the stipulations·of the contract taken as a whole you can come to the conclusion that there is a partnership."

Our own Court of Appeals has distinctly refused to acquiesce in the suggestion that a community of interest in profits imports the agency of a full partnership. In *Jones* v. *Gould* (209 N. Y. 419, 426) the court says, *per curiam:* " The authorities in some of the states hold that in the prosecution of the venture each party has the same full power to bind his associates in any contract in regard to the venture that an ordinary commercial partner would have. We are not now inclined to hold that doctrine in its full integrity."

In *Williams* v. *Gillies* (75 N. Y. 197, 202) Church, Ch. J., says: " Conceding a community of interest, and in some sense a partnership, it does not follow that all the incidents and liabilities of a commercial partnership attach. The transaction must be construed with reference to the character of the property and the legal rules applicable to it."

In *Smith* v. *First Nat. Bank* (151 App. Div. 317, 322) Houghton, J., writes: " The plaintiff and Patton were not such general partners as gave the latter authority to pledge joint enterprise property, and if any apparent authority existed it did not flow from any general partnership relation."

In *Kent* v. *Universal Film Mfg. Co.* (200 App. Div. 539, 546), Laughlin, J., holding a joint venture to exist, pointed out the distinction: " We are not concerned with the question as to whether Poli would be liable to third persons as one of the partners."

This distinction is also recognized in *China & Japan Trading Co.* v. *Provand* (155 App. Div. 171, 175, 176).

The insurance company paid Berg at its peril, relying on his indemnity agreement, and the arrangement between Berg and the plaintiff merely to share the profits of the transaction did not constitute Berg an agent to receive payment for the corpus, the legal title to which he had vested pursuant to the agreement in the plaintiff.

With respect to the defense that the suit was not begun within the one-year period limited by the policy, I am constrained to follow Mr. Justice Glennon's decision on the former trial of this action (*Graham Bros. Aktiebolag* v. *St. Paul F. & M. Ins. Co.*, 122 Misc. 581, 585) that the defendant waived this provision. The loss occurred in March, 1919. Payment was demanded on behalf of plaintiff on December 4, 1919. Defendant retained the demand without reply until after the year had expired and on April 28, 1920, further inquiry was made. Finally on May 13, 1920, the defendant wrote that it was actively engaged in investigating the matter, concluding: " We hope to be able to advise you definitely of our position in the matter within a very few days."

It finally returned the documents to the plaintiff's representative on July 26, 1920, and in October, 1920, signed a stipulation waiving the presentation of formal proofs of loss.    These events in substance and chronology closely parallel the occurrences in *Syracuse Lighting Co.* v. *Maryland Casualty Co.* (226 N. Y. 25), where the Court of Appeals held the question of waiver to be one of fact. The facts here are even stronger for waiver, because in that case the insurance company had prior to the expiration of the short period of limitation distinctly refused to pay the claim.    It thereafter continued negotiation, however, and HOGAN, J., writes for a unanimous court (at p. 35): " To determine that defendant had not waived the provision of the policy as to the limitation of time and was not estopped from asserting the same as a defense would impute to it a fraudulent intent to lull the plaintiff into inactivity, induce it to continue negotiations until after the expiration of the thirty days and thereby secure the opportunity to later interpose a defense which it considered impregnable."

With respect to the claim of ratification, the most that can be said is that when the plaintiff ascertained that Berg had collected the money from the insurance company, it protested, expressed surprise that the insurance company should pay any one other than the holder of the certificates, but endeavored to make the best of a bad bargain by demanding payment from Berg.    It never acquiesced in the propriety of the payment.    There was no element of estoppel in favor of the insurance company nor anything which indicated an intent on the part of plaintiff to surrender its right against the insurance company unless Berg gave up the money which plaintiff asserted he had wrongfully collected.    In *McSwegan* v. *Pennsylvania R. R. Co.* (7 App. Div. 301, 304), where defendant carrier wrongfully gave the buyer possession of goods, which plaintiffs had agreed to sell upon payment of the price, PATTERSON, J., wrote: " Plaintiffs, upon learning that the electrical company had possession of the machinery, entered into correspondence with it,    *    *    *    with reference to the subject of payment, but in all the correspondence there is nothing which recognizes the wrongful delivery made by the defendant, and it relates merely to efforts to secure payment for the machinery, or a compliance with the terms upon which the original executory contract was made.    *    *    *    The question in the case is whether the plaintiffs have deprived themselves of the right to enforce the cause of action which had accrued against the defendant.    Such a deprivation could only result from either a waiver of the right by an adoption of the delivery or from such conduct on the part of the plaintiffs as would constitute an estoppel against the enforcement of that

right.  \*  \*  \*   All that the plaintiffs did with reference to the matter was, that finding that their property had wrongfully come into the possession of the electrical company they concluded to recognize the situation, provided the terms of the executory contract should be complied with.  \*  \*  \*   They were content to receive payment and avoid trouble and litigation if the electrical company would comply with its contract, but they steadfastly adhered to their claim against the defendant."

Verdict directed in favor of plaintiff for $10,300 with interest from November 21, 1920, with exceptions to defendants.

The motions of the defendants for the direction of a verdict are all denied with exceptions to each defendant. Thirty days' stay; sixty days to make a case.