PHILIP W. WRENN and Others, General Partners, and GEORGE L. WRENN, Limited Partner, Comprising the Limited Copartnership Doing Business under the Firm Name and Style of WRENN BROS. & Co., Respondents, v. JULIUS MOSKIN, Appellant.

First Department, June 18, 1929.

*Max D. Steuer* of counsel [*Harold L. Fierman* and *James S. Hays* with him on the brief; *Kaye, McDavitt & Scholer*, attorneys], for the appellant.

*Caruthers Ewing* of counsel [*Richard M. Russell, William M. Chadbourne* and *Stanhope Foster* with him on the brief; *Chadbourne, Hunt, Jaeckel & Brown*, attorneys], for the respondents.

PROSKAUER, J.   Plaintiffs, constituting the firm of Wrenn Bros. & Co., are brokers and members of the New York Stock Exchange. In October, 1925, the defendant Moskin entered into a joint venture with Henry M. Brooks and Irving H. Hare to speculate in Devoe & Raynolds common stock, Class A. An account of the joint venture was opened with Wrenn Bros. & Co. by Brooks in the name of "Henry M. Brooks and Julius Moskin." Plaintiffs were unacquainted with Moskin and never saw him. The authority of Brooks to trade upon this account was fixed by the following writing:

"*November Sixth*, 1925.

"WRENN BROS. & Co.,
        "39 Broadway,
                "New York, N. Y.

"GENTLEMEN.— I hereby authorize Mr. Henry M. Brooks to buy or sell securities for cash or for margin for the account of Henry M. Brooks and Julius Moskin.   This is to continue in force until notification in writing by me to the contrary.   Please send all notices and statements to Mr. Brooks, 39 Broadway, New York, N. Y.                        Very truly yours,
                                "J. MOSKIN."

Accounts for the joint venture were opened with other brokers in the names of "Brooks and Moskin," "Brooks and Hare" or

" Moskin and Hare." In addition, however, Brooks carried personal accounts both with Wrenn Bros. & Co. and with other brokers, in which he traded largely in this Devoe & Raynolds stock. Toward the end of January, 1926, Moskin discovered that the transactions had far exceeded in volume and amount the limits contemplated by his original agreement with his coadventurers. Insisting that his liability must be restricted, he procured the execution of a contract with his coadventurers directly limiting the volume of the transactions, and gave to Brooks a new power of attorney to trade " pursuant to the terms of a certain agreement entered into between myself and said Henry M. Brooks and Irving H. Hare, dated December 31, 1925, and modified by an agreement dated January 30, 1926." At the time this power of attorney was given, the account with Wrenn Bros. & Co. showed a large profit. About the middle of February, 1926, there was a market crash in Devoe & Raynolds stock; this profit was transformed thereby into a very large loss. The January power of attorney, containing the limitation upon Brooks' authority, was not exhibited to Wrenn Bros. & Co. until after this crash and there was no further trading in the account after they saw the power of attorney. One of the plaintiffs admits, however, that earlier in February and while the account still showed a profit, Brooks told him that he had a power of attorney from Moskin.

Plaintiffs have recovered in this action against Moskin for the amount owing them upon the Brooks and Moskin account over and above the amount realized upon the sale of the collateral. The defendant Moskin challenges the validity of the entire judgment upon the ground that the mere mention by Brooks to the plaintiffs early in February that he had a power of attorney from Moskin, placed them upon notice so that they are legally chargeable with the limitations contained in the January thirtieth power of attorney upon Brooks' authority to trade for Moskin's account. There was nothing, however, to indicate to Wrenn Bros. & Co. that the power of attorney referred to by Brooks in any way differed from the written authority which had been lodged with them on November 6, 1925. The November sixth letter was explicit. It recited that the authority conferred upon Brooks was " to continue in force until notification in writing by me to the contrary." A mere casual reference by Brooks to the fact that he had a power of attorney from Moskin was wholly insufficient reasonably to place Wrenn Bros. & Co. upon inquiry when they had been advised in writing by Moskin that the November sixth authority was to continue in force until he notified them in writing to the contrary. Since he gave no such notice in writing or orally,

the plaintiffs were entirely justified in relying upon his letter of November sixth.

The appellant raises a further serious objection to this judgment. On four separate occasions between December 22, 1925, and January 11, 1926, Brooks was permitted by Wrenn Bros. & Co. to withdraw securities from the joint account by instructing their delivery to other brokers at prices ranging from fifteen to twenty-five points below the current Stock Exchange quotations. The stock was actively traded in upon the Stock Exchange and the " delivery out " of these shares to other brokers upon instructions to receive payment therefor at far less than the market price was an unusual and suspicious occurrence. The record is barren of evidence as to whether the accounts with the receiving brokers, to whom this stock was transferred on these four occasions, were or were not joint venture accounts. There is nothing to indicate that they were and it is conceded that Brooks was trading for his own account. Indeed, there are circumstances which give some slight indication that they were not joint venture accounts, but were the personal accounts of Brooks. We need not go so far, however, as to draw such an inference from the meagre evidence on this question contained in this record. If Wrenn Bros. & Co. permitted Brooks to exceed the authority conferred upon him by the letter of November sixth in withdrawing these shares in this manner, they were *prima facie* liable to Moskin for the damage thus occasioned. If they wished to negative this claim of damage, the burden rested upon them to prove that the accounts into which the stock was transferred were joint venture accounts.

The appellant claims as an offset in the sum of $109,982, the difference between the market value of the shares thus transferred and the prices at which they were transferred. The validity of this claim turns solely upon the question of the authority of Brooks so to withdraw these shares. The learned trial justice held that from the relationship of the joint venture itself, Brooks automatically derived authority to demand and receive from Wrenn Bros. & Co. any of the securities of the joint venture either without payment or for inadequate payment. We hold that no such authority is to be derived from the relationship of a joint venture. This court has so held in *Graham Brothers Aktiebolag* v. *St. Paul Fire & Marine Ins. Co.* (220 App. Div. 712), affirming without opinion the same case reported in 127 Miscellaneous, 403. It was there held with respect to a joint venture that " to find that one is agent of the other, we should find that authority so to act was given by that other by agreement, express or implied." (33 Harvard Law Rev. 854.) This doctrine is supported by the authorities there

cited. (*Jones* v. *Gould*, 209 N. Y. 419, 426; *Williams* v. *Gillies*, 75 id. 197, 202; *Smith* v. *First Nat. Bank*, 151 App. Div. 317, 322; *Kent* v. *Universal Film Mfg. Co.*, 200 id. 539, 546; *Badeley* v. *Consolidated Bank*, 38 L. R. Ch. 238, 249.);

A joint venture in this respect differs from a partnership and the claim that Brooks had such authority must be grounded upon evidence that it was given to him. There is no such evidence. It is true that he was to manage the account, but his management was to be for the joint venture. Certainly no actual authority was given to him to withdraw securities of the joint venture for his own personal benefit. No such authority, actual or apparent, was conferred upon him by the letter of November sixth. He was authorized there only to buy or sell securities for cash or for margin for the account of Henry M. Brooks and Julius Moskin. Reasonably interpreted these words mean that he was to buy or sell at approximately the market prices. They do not mean that he could withdraw securities without payment at all or at a valuation approximately twenty-five per cent under the current market prices. *Prima facie,* therefore, the evidence showed that the defendant was damaged by this unauthorized conduct of Brooks and the plaintiffs to the extent of $109,982. In the absence of proof that the withdrawn securities went into the joint venture account, the appellant was entitled under his counterclaim to offset this amount.

For these reasons the judgment appealed from should be reversed on the law and the facts, and a new trial ordered, with costs to the appellant to abide the event, unless plaintiffs stipulate to reduce the judgment as entered to $94,893.11, with interest and costs; in which event the judgment as so modified should be affirmed, without costs of this appeal.

DOWLING, P. J., MERRELL, FINCH and McAVOY, JJ., concur.

Judgment reversed and a new trial ordered, with costs to the appellant to abide the event, unless plaintiffs stipulate to reduce the judgment as entered to $94,893.11, with interest and costs; in which event the judgment as so modified is affirmed, without costs of this appeal. Settle order on notice.