PHILIP W. WRENN and Others, General Partners, and GEORGE L. WRENN, Limited Partner, Comprising the Limited Copartnership Doing Business under the Firm Name and Style of WRENN BROS. & Co., Respondents, Appellants, *v.* JULIUS MOSKIN, Appellant, Respondent, Impleaded with HENRY M. BROOKS, Defendant.

First Department, May 13, 1932.

*Caruthers Ewing* of counsel [*Chadbourne, Hunt, Jaeckel & Brown,* attorneys], for the plaintiffs.

*David L. Podell* of counsel [*Benjamin M. Kaye, James S. Hays, Herman Shulman* and *Nathaniel H. Jackson* with him on the brief; *Kaye, McDavitt & Scholer,* attorneys], for the defendant Julius Moskin.

MARTIN, J. The stock brokerage firm of Wrenn Bros. & Co. brought this action to recover from the defendant the sum of $552,233.02, with interest thereon from February 1, 1926. The case was tried before the court and a jury. After all the evidence was presented, both sides moved for the direction of a verdict on all the issues raised, the defendant Julius Moskin reserving his right to go to the jury on the defense of corner and partnership raised by him.

The court granted the plaintiffs' motion for judgment in the sum of $204,875.11, with interest, but allowed the defendant Julius Moskin an offset in the sum of $110,964.30, and denied the defendant's request to go to the jury, to the denial of which motion the defendant duly excepted. The plaintiffs did not request leave to go to the jury on the matter decided by the court adversely to them but took an exception to the ruling of the court.

This action was before this court on a previous appeal. At the first trial a verdict was directed in favor of the plaintiffs for $233,810.16, and the defendant appealed. This court reversed that judgment and directed a new trial unless the plaintiffs stipulated to reduce the judgment to $94,893.11, with interest and costs. When the case was here before (226 App. Div. 563), the court said: " *Prima facie,* therefore, the evidence showed that the defendant was damaged by this unauthorized conduct of Brooks and the plaintiffs to the extent of $109,982. In the absence of proof that the withdrawn securities went into the joint venture account, the appellant was entitled under his counterclaim to offset this amount."

The plaintiffs contended that the securities which were withdrawn from the joint venture account went to other brokers for the account of the joint venture and, therefore, declined to consent to reduce the prior judgment by the value of these securities so withdrawn or transferred. The action was thereupon retried.

On the second trial plaintiffs assumed and we believe met the burden imposed on them by this court in its decision requiring them

to prove that the securities withdrawn by Brooks went into pool accounts.

It was not denied that the debit balance on the books of the plaintiffs in the Brooks and Moskin account was $204,875.11, which, with interest from February 28, 1926, was the amount for which plaintiffs were entitled to judgment, unless that account should have been credited with stocks which were transferred from that account to other brokers on the four occasions mentioned in the prior opinion of this court. The four transfers of stock mentioned on the prior appeal are those of which it was said on the record as it then existed that " The record is barren of evidence as to whether the accounts with the receiving brokers, to whom this stock was transferred on these four occasions, were or were not joint venture accounts."

The plaintiffs say they supplied upon the second trial the evidence which we held was absent on the first trial. The trial court, however, held that it was incumbent on plaintiffs to produce evidence that the stock transferred out of the Brooks and Moskin account went into the pool accounts and that the evidence produced did not warrant that conclusion.

The sole questions, therefore, are whether the stock actually went into accounts, under whatever names, on the books of the receiving brokers, which were, as a matter of fact, pool accounts; whether Wrenn Brothers had knowledge of the limitation of Brooks' authority in dealing with them; whether they used due diligence to learn the true facts about the account and whether they exceeded the authority vested in them.

The plaintiffs contend that the undisputed evidence shows that each and every transfer of stock from the Brooks and Moskin account, wherein the only other person interested was Irving H. Hare, went to the credit of an account which was a pool account. The original agreement between defendant Brooks and Hare provided that accounts should be opened with several brokers whose names were then agreed upon, *and with other brokers, from time to time*, as thereafter agreed upon. This original agreement was not in writing, but on December 31, 1925, the parties reduced their agreement to writing, though no copy of that agreement was furnished to or seen by plaintiffs until after February 15, 1926. The defendant, appellant, testified, however, that this writing of December 31, 1925, reflected the exact agreement which was made orally in October, 1925, when the pool was formed. That agreement provided in part: " that moneys or stock may be withdrawn *from any brokerage firm in which the syndicate has an account to any other brokerage firm in which the syndicate has an account, for account of the syndicate.*"

At the time the account was opened the defendant Brooks was told by plaintiffs that they would not carry more than a total of 10,000 shares of DeVoe & Reynolds stock in all the several accounts which Brooks controlled. However, since the Brooks and Moskin account was used principally for the purchase of shares, with very few sales out of it, the shares held in that account, taken with the other accounts in which Brooks was interested, soon exceeded the limit set by the plaintiffs. If this excess number of shares were offered on the market for sale at one time, the effect would have been to improperly or unnecessarily force the price down, which would have been directly contrary to the purpose of the syndicate. The other alternative was to find other brokerage houses which would be willing to carry the excess stocks, and transfer such stocks to other brokers. Transferring stock to other pool brokers at less than the market price at once created additional margin in the receiving broker's account to the extent of the difference between what the receiving broker paid for the stock and the market value of the stock. There is ample proof that the stocks which went out of the Brooks and Moskin account at less than the market went into pool accounts with other brokers. It is contended, therefore, that the judgment should have been for the debit balance in the Brooks and Moskin account.

The transfers of stock to the four accounts in question were as follows:

(1) December 22, 1925, to Hornblower & Weeks, 1,100 shares, stated by defendants' counsel to have been so transferred for $18,232 less than the then market value of the stock.

(2) January 4, 1926, to Prentice & Slepack, 2,000 shares, stated by defendants' counsel to have been so transferred for $40,750 less than the then market value of the stock.

(3) January 8, 1926, to E. W. Clucas & Co., 1,000 shares, stated by defendants' counsel to have been so transferred for $21,000 less than the then market value of the stock.

(4) January 11, 1926, to Hendrickson & Co., 1,500 shares, stated by defendants' counsel to have been so transferred for $30,000 less than the then market value of the stock.

This court in its opinion when this case was first before it stated that whether the four accounts were pool accounts or not were questions of fact for the jury; that there were circumstances which gave some slight indication that they were not joint venture accounts; that unless plaintiffs accepted a judgment of $94,893.11, the cause should be retried.

The plaintiffs aver that the refusal to accept such compromise was not made in an arbitrary spirit, but with complete confidence

on their part that the evidence which the court held had not been introduced could be furnished; and they now contend that that evidence has been supplied. It is clear that if it was furnished, the plaintiffs were entitled to a verdict for the full amount. The plaintiffs offered considerable evidence which makes it appear that these accounts which this court held plaintiffs had not shown were pool accounts, were beyond question pool accounts and known to all the parties to have been such.

The circumstances surrounding the opening of the accounts, the facts that these stocks were not sold but were simply transferred at a price below the market in order to make a margin with the brokerage house that accepted these accounts and many other circumstances which might be related in detail, clearly indicate that these were pool accounts and known to be such by the defendants. A new trial being required, it is unnecessary to give in detail all the evidence that warranted such a conclusion. It is clear, however, that at the end of the trial the plaintiffs were at least entitled to go to the jury on this item and that the court erred in allowing the offset. We are of the opinion that a contrary verdict would have been against the weight of the credible evidence.

The judgment should, therefore, be reversed and a new trial ordered, with costs to abide the event.

FINCH, P. J., MERRELL, McAVOY and SHERMAN, JJ., concur.

Judgment reversed and a new trial ordered, with costs to abide the event.