The Village of Canton, New York, Respondent, v. Globe Indemnity Company, Appellant, Impleaded with the H. K. Corbin Company, Inc., Defendant.

Third Department, July 6, 1922.

Principal and surety — action against surety on building contract to recover excess cost and liquidated damages where contractor abandoned contract — surety not prejudiced by overpayments to contractor — surety not liable for liquidated damages where delay caused by owner or where construction completed by owner after abandonment by contractor.

In an action against a surety on a bond given to secure the performance of a contract for the construction of a water works system to recover the amount paid out by the municipality, which completed the construction of the water works after the contract was abandoned by the contractor, in excess of the amount stipulated in the contract, and for liquidated damages for delay in completing the construction, the surety is not relieved of its liability on the ground that the municipality advanced moneys to the contractor in excess of ninety per cent of the engineer's estimates, which was the extent of payment authorized prior to the completion of the contract, where it appears that most of the advancements were paid out of subsequent estimates, and that none of them were taken into consideration in fixing the damages in favor of the plaintiff, for under the facts of the case the surety was not injuriously affected.

The surety is not liable for the amount stipulated as liquidated damages for delay in the completion of the water works, where it appears that the contractor abandoned the contract prior to the date of its completion, and that the municipality after notifying the surety of the act of the contractor, proceeded to complete the construction, for the provision for liquidated damages is applicable only to delayed and not to abandoned performance.

Furthermore, liability on the part of the surety is excluded by the clause in the bond to the effect that if the municipality should complete or relet the contract, then any forfeiture provided for in the contract against the principal should not be operative as against the surety.

APPEAL by the defendant, Globe Indemnity Company, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of St. Lawrence on the 3d day of March, 1922, upon the report of an official referee, and also from an order of the Supreme Court made at the Schenectady Special Term and entered in the office of the clerk of the county of St. Lawrence on the same day granting the plaintiff an additional allowance of costs.

The defendant the H. K. Corbin Company, Inc., made a contract with the plaintiff to construct for it a water works system on or before September 1, 1918, furnishing therefor all labor and material and to build the same in accordance with plans filed with the clerk of the board of water commissioners of said village. The contract in its entirety is too lengthy to be here detailed and it is necessary only to refer to brief portions thereof which are material to the questions here involved.

It was provided in the contract that, if it should be abandoned by the contractor or if the board of water commissioners should be of the opinion that the work was unnecessarily or unreasonably delayed or was not making such progress as to indicate its completion within the required time, the said board should have the power " by contract or otherwise," as it might determine, to complete the contract, procuring the necessary labor, material, tools and appliances therefor, " and to charge the expense of said labor, tools and material to the said contractor," all the expense so charged to be deducted and paid by the village out of such money as might be due or become due to the contractor under said contract, and that in case such expense was less than the sum which would have been payable under the contract if the same had been completed by the contractor the latter should be entitled to the difference, and in case the expense should exceed the sum which would have been payable under the contract if completed by the contractor the latter · should pay the amount of said excess to said village.

There was a provision in the contract for liquidated damages as follows: " It is further agreed that for each and every day the

work contemplated in this contract remains uncompleted beyond the time set for its completion the Contractor shall pay to the Village of Canton the sum of twenty-five (25) dollars, as liquidated damages and not as a penalty. The said sum of twenty-five (25) dollars a day may be deducted from money due or to become due to said Contractor."

It was further agreed that the engineer of the village would on or about the first day of each month make an approximate estimate of the work done and materials furnished during the preceding month and the value thereof at the contract prices and that upon such estimate being made the contractor should be paid on or before the tenth day of that month ninety per cent of the amount of such estimate. The remaining ten per cent was to be held against the completion of the work and was to be included in the payment on the final estimate of the said engineer.

At the time of the execution of said contract there was also executed to the plaintiff by the contractor as principal, and the appellant herein, Globe Indemnity Company, as surety, a bond conditioned for the faithful performance by the said contractor of its said contract according to the terms, covenants and conditions thereof. Said bond provided that the surety should be notified in writing of any act of its said principal which might involve a loss to the surety immediately after the occurrence of such act should have come to the knowledge of the obligee.

It was further provided in said bond that should the principal therein voluntarily abandon its contract or be lawfully compelled by the obligee to cease operations thereunder the surety should have the right " in its option to assume the said contract and to sublet or complete the same."

The contractor entered upon the performance of said contract and continued in the performance thereof until September 10, 1918, when it voluntarily abandoned the same. It notified the board of water commissioners of the village on August 15, 1918, of its intention so to abandon the contract on the following 10th of September, 1918, on the ground that because of war conditions, fulfillment of the contract had become impossible, and it regarded itself as free from its obligations. Said board of water commissioners immediately and on August 16, 1918, notified the appellant of such action of the contractor and that the plaintiff looked to the appellant for the completion of the contract and that unless the latter proceeded with the work from and after September 10, 1918, the plaintiff would do so and look to the appellant for the difference between the contract price and the expense of completion. To this notification the appellant paid no attention.

The board of water commissioners thereupon after September 19, 1918, proceeded with the performance of the contract and completed the same November 19, 1919, at an expense of $25,529.56. When the contractor abandoned the contract September 10, 1918, it had furnished labor and material amounting to $64,532.13.

The referee finds that it cost the plaintiff $7,202.90 more to complete the contract than it would have cost it had the contractor completed the same according to its requirements. This fact as so found is not questioned. He also finds that the contract was completed 445 days after September 1, 1918, the time therein specified for its completion and allows the plaintiff $25 per day as liquidated damages amounting to $11,125. He directs judgment for these two amounts aggregating $18,327.90 with interest thereon from December 10, 1919, on which day a demand was made on the defendants for the damages claimed by the plaintiff.

*Robert M. McCormick* [*F. A. W. Ireland* of counsel], for the appellant.

*Lawrence Russell*, for the respondent.

COCHRANE, P. J.:

The appellant alleges in its answer that the plaintiff during the performance of the contract paid to the contractor considerable sums in excess of the amounts due it and in violation of the rights of the appellant thereby discharging the latter from its obligations under its bond. There is no allegation in the answer that in any other particular the plaintiff varied or modified the terms of the contract or so conducted itself or dealt with the contractor as to prejudice the rights of the appellant as a surety. It is true that the plaintiff from time to time advanced moneys to the contractor in excess of ninety per cent of the engineer's estimates theretofore made but nearly all of these advanced payments were absorbed in the subsequent estimates. None of the advancements not thus paid out of subsequent estimates have been charged to the appellant or taken into account by the referee in arriving at his conclusion in respect to damages. It appears that on July 25, 1918, before the plaintiff had any information that the contractor would make default in its contract, there was advanced to the latter $2,500 which was not deducted from any estimate but for which no claim was made by the village and was not allowed against the appellant by the referee. The appellant contends, however, that the effect of these advanced payments was to discharge the surety because they constituted an inducement to the contractor to abandon the contract or removed from the latter an incentive to complete the same. It has been held in some jurisdictions that advanced

payments on a building contract may be so antagonistic to the interests of a surety as to release him from his obligation, but that doctrine has not found special favor in this State although it is recognized that the circumstances may be such as to justify the application of the principle.    (*St. John's College* v. *Ætna Indemnity Co.*, 201 N. Y. 335, 341; *Elmohar Co.* v. *Phillips*, 188 App. Div. 100; *British American Tobacco Co., Ltd.,* v. *United States Fidelity & Guaranty Co.*, 177 id. 582.)    Very clearly from the facts here appearing the surety has not been injuriously affected.    Plaintiff always retained ten per cent of the engineer's estimates except in one instance where the appellant consented that a payment be made therefrom.    The overpayments were made in good faith and to facilitate the work and I am persuaded from the evidence that instead of proving prejudicial to the appellant they were actually beneficial.    In the case last cited it was said by Mr. Justice SMITH in language which is here applicable: " If the owner to relieve the contractor's distress had loaned to him at any time a sum of money it would be hypercritical to hold that he had thereby lessened the incentive of the contractor to finish his contract, and thereby release the surety.    These overpayments innocently made by the owner can hardly be deemed to be more prejudicial to the surety's rights." The appellant has no cause for complaint in respect to this branch of the case.

I think, however, the appellant is not liable for liquidated damages.    In the first place, it appears without contradiction that the parties mutually agreed to a change in the location of the pipe line which had the effect of delaying the progress of the work at least two months.    In *Mosler Safe Co.* v. *Maiden Lane Safe Deposit Co.* (199 N. Y. 479) the syllabus is as follows: " Where the parties are mutually responsible for the delays, because of which the date fixed by the contract for completion is passed, the obligation for liquidated damages is annulled and, in the absence of some provision under which another date can be substituted, it cannot be revived.    If the plaintiff failed to complete within a reasonable time after crediting the defendant's delays, then the latter had a cause of action for the former's neglect and the measure of damages would be the actual loss proved to have been sustained."    It is not necessary, however, to rely on that principle.    The authorities quite uniformly hold as far as I am advised that a provision for liquidated damages in a building contract such as we are here considering should be construed as applying only to delayed and not to abandoned performance.    (*Murphy* v. *United States Fidelity Co.*, 100 App. Div. 93; affd., 184 N. Y. 543; *Brady* v. *Mayor, etc.*, 44 Hun, 511; *Crawford* v. *Becker*, 13 id. 375; *Murphy* v. *Buckman*, 66 N. Y. 297; *Buhler Co.* v. *New*

*York Dock Co.,* 170 App. Div. 486; 2 Williston Cont. [1920 ed.] § 785; *Rainier* v. *Masters,* L. R. A. 1916E, 1179; *Shields* v. *Shields Construction Co.,* 81 N. J. Eq. 286.)    The contract herein provides that on abandonment thereof by the contractor the plaintiff may itself at its option complete the work at the expense of the contractor. This provision by the terms of the bond is made subject to the prior right of the surety to do the same thing.    It seems anomalous that an owner should be allowed liquidated damages for delays in the completion of a contract which the owner itself completed even though as is probably true in this case the plaintiff proceeded with due diligence. There are few cases indeed where it cannot be said that even more than due diligence might have been exercised.    If the contractor had completed the contract but had failed to do so within the required time it would not be accepted as an excuse that reasonable diligence had been exercised.    The contractor would have been bound by the terms of his contract even in the face of an impossibility to complete it within the required time.    The plaintiff consumed a year and two months in the completion of this contract after September 1, 1918, the time fixed for its completion, at an expenditure of only $25,529.56, whereas in only about a year and four months allowed for the performance of the entire contract the contractor expended $64,532.13.    Can it justly be said that the plaintiff could not have hastened the work to a more speedy completion?    In *Brady* v. *Mayor, etc. (supra)* it was said: " Under the contract the defendant had the right to cancel it and to finish the work itself, charging Brady with any excess in the expense of doing it.    Could it also recover of Brady fifteen dollars [a day] for its own delay in completing the work? " This significant question applicable to this case is not answered by the finding of the referee " that the plaintiff and said Board without any unnecessary delay prosecuted said contract to completion."    The provision for liquidated damages must be construed, not in the light of the fact that there has been no " unnecessary delay " by the plaintiff, but in the light of possibilities permitted by such construction.    There would be a constant temptation to an owner in such a case not to hasten the work to completion. The inference from this is that it was the intention of the parties that the liquidated damages should apply only to work performed by the contractor and not by the plaintiff.    Without continuing the discussion, however, it seems to me the question is foreclosed by the foregoing authorities.    No case to the contrary is cited by the plaintiff.

Attention is also called to the following provision in the bond: " And if said obligee shall complete or relet the said contract, then any forfeitures provided in said contract against the principal

shall not be operative as against the surety." The word "for-feiture" has an elastic meaning. "Its meaning is to be determined by the connection in which it is used." (26 C. J. 891; *Chaude* v. *Shepard*, 122 N. Y. 397.) I think it applies in the present instance to the provision for liquidated damages and excludes the liability of the surety therefor where the obligee completes or relets the contract. Both on reason and authority, therefore, the judgment as to this branch of the case is erroneous.

The judgment as to the appellant should be reversed and a new trial granted, with costs to the appellant to abide the event, unless the plaintiff stipulates to reduce the damages as to the appellant to $7,202.90, with interest, and to reduce the additional allowance granted to $400, in which event the judgment should be modified accordingly and as so modified affirmed, without costs of appeal.

Judgment as to the appellant reversed and a new trial granted, with costs to the appellant to abide the event, unless the plaintiff stipulates to reduce the damages as to the appellant to $7,202.90, with interest, and to reduce the additional allowance granted to $400, in which event the judgment is modified accordingly and as so modified unanimously affirmed, without costs of the appeal.