NICHOLAS P. YOUNG and Another, Copartners Doing Business
under the Firm Name of YOUNG & METZNER, Respondents, v.
ST. PAUL FIRE AND MARINE INSURANCE COMPANY and Others,
Appellants.

First Department, April 6, 1923.

**Insurance — marine insurance — carrier held general floating policy
covering no specific risks — shippers paid premium to carrier — carrier
applied for and secured under contract separate insurance for shippers'
cargo — insurer is liable directly to shippers for loss and cannot make
deductions for premiums owing it by carrier on other risks.**

An insurer of marine risks is liable directly to shippers for loss sustained, where
it appears that the carrier held a general floating policy with the insurer, which
covered no specific risks, and which provided for an insurance separately, risk
by risk, up to the maximum assumed by it; that the shippers paid premiums to
the carrier on goods shipped which constituted the entire cargo of a barge, and
that the carrier applied for and secured, under the contract which it had with
the insurer, separate insurance on the shippers' cargo; the shippers are not
relegated to their claims as general creditors against the bankrupt carrier.

The insurer cannot deduct from the amount due to the shippers, premiums owing
to it by the carrier upon other shipments or cargoes belonging to other shippers.

APPEAL by the defendants, St. Paul Fire and Marine Insurance
Company and others, from a judgment of the Supreme Court in
favor of the plaintiffs, entered in the office of the clerk of the county
of New York on the 7th day of November, 1921, upon the decision
of the court rendered after a trial at the New York Special Term.

*Harrington, Bigham & Englar* [*Dix W. Noel* of counsel; *D. Roger
Englar* with him on the brief], for the appellant St. Paul Fire and
Marine Insurance Company.

*Walter S. Newhouse* [*Walter S. Newhouse* of counsel; *Albert
Brandt* with him on the brief], for the appellants McIntosh and
Bielaski, as receivers, etc.

*Otterbourg, Steindler & Houston* [*Charles A. Houston* of counsel;
*Edwin M. Otterbourg* with him on the brief], for the respondents.

DOWLING, J.:

Plaintiffs are engaged in the bagging business at Long Island
City, borough of Queens, city of New York. Defendant Inland
Waterways Steamship Corporation (hereinafter referred to as the
carrier) was engaged in the business of transporting freight, as
a common carrier, through inland waterways between Philadelphia
and New York. Defendant St. Paul Fire and Marine Insurance
Company (hereinafter referred to as the insurer) is a corporation
transacting the business of insurance within the State of New York.

On May 11, 1920, the insurer (with other companies) executed and delivered to the carrier a policy of marine insurance, whereby the companies severally (but not jointly) insured "Inland Waterways Steamship Corporation for account of whom it may concern. Loss, if any, payable to the order of them or order.

"On any and/or all goods and/or cargo and/or live stock and/or baggage, and/or express matter under and/or on deck (if under permanent cover) and/or advances made or liability for same incurred or assumed by the carrier on the said goods, etc., as above and/or prepaid freight, whilst being transported by or intended for transportation by vessels owned, chartered and/or operated by the Inland Waterways Steamship Corporation (hereinafter referred to as the assured) irrespective of any conditions, or statements to the contrary, in any and all shipping receipts, and/or way bills and/or bills of lading covering said goods, etc., as above or on any ticket for transportation or any claim check given for baggage issued by the assured or their agents, or connecting carriers or forwarders.

"At and from Philadelphia to New York and *vice versa*, direct or otherwise, in or out of the usual order including intermediate points and also including shore risk prior to shipment and/or after discharge. This insurance attaching and covering whether water borne or not from the time the risk of said goods, etc., as above is assumed or incurred by the assured and to continue until delivery of the goods to consignees and/or connecting carriers and until the liability of the assured is terminated * * *.

"Attaching as to all shipments made on and after April 26th, 1920.

"Valued at sums agreed upon by the assured with their shippers and/or consignees and/or other parties in interest prior to sailing of the vessel and before any known or reported loss or accident.

"It is also agreed that the liability of the assured as common carriers as to the interest insured hereunder is covered under this policy.

"It is agreed that the assurers hereunder will reimburse the assured for all payments made by it for such losses to said goods, etc., as above insured hereunder, arising from the perils enumerated in this policy, as the assured may in its judgment settle with those interested in such merchandise, irrespective of its liability therefor * * *.

"Rates as may be agreed upon. Premiums payable monthly in cash.

"The assured hereby warrant and agree to report to the insurer as soon as practicable after they have knowledge thereof, all their above described risks to pay premiums thereon when due"

The carrier applied for and procured the policy with the intent and purpose of procuring marine insurance for the account of the plaintiffs and other shippers, and the rate paid to it for freight included the cost of insurance upon the cargo.

The policy as issued was a general floating policy. At the time it was issued it covered no specific risk; no rates were mentioned, the rider providing " rates as may be agreed upon." The insurers simply agreed in advance to insure separately, risk by risk and shipment by shipment, up to the maximum assumed by them, the rate for each risk to be the subject of separate agreement, so that the policy was in effect an inchoate contract of insurance. (*Hartshorn* v. *Shoe & Leather Dealers' Ins. Co.*, 15 Gray, 240.)

On June 5, 1920, while the policy was in full force and effect, the plaintiffs delivered to the carrier at Camden, N. J., 298 bales of gunny bags, belonging to them, of the value of $13,410, and agreed to pay the rate of twenty-two cents per pound, and in consideration thereof the carrier agreed to carry the bales to Long Island City and deliver them to plaintiffs, the said rate including marine insurance, and the goods to be insured against marine risk. The bales were placed for shipment by water on board the barge *Alpha*, a vessel belonging to the carrier; and it was agreed between plaintiffs, the carrier and the insurer that the cargo on the *Alpha* was insured in the sum of $13,410 under the policy in question for the time of the shipment. The premium for the insurance of the plaintiffs' goods shipped in the *Alpha* was duly paid to defendant insurer.

The barge *Alpha* proceeded on its way, and on June eleventh or twelfth the cargo while still on board was destroyed by fire, due to lightning. Proofs of loss were duly furnished and the carrier's proportion of the loss is $2,630.33, no part of which has been paid, though more than thirty days have elapsed since it was duly demanded.

The insurer resists payment of the policy upon the ground that the carrier is the insured, and the party through which all rights of shippers in the first instance should be enforced, and that the equitable rights of plaintiffs under the policy of insurance are limited to their proportion of such sums as may be recoverable by the carrier, or its receivers. There is an express provision of the policy that losses shall be payable only after first deducting all indebtedness for premiums. It is in evidence that on December 2, 1920 (when the amount of the loss in question was adjusted), the carrier was indebted for premiums due on other risks under the policy to the extent of $11,801.28, whereof the carrier's share was $2,360.24.

The receivers of the carrier contend that the policy was one of reinsurance, to reinsure the carrier for losses it might be obligated to adjust with the shipper and for which it should be liable and that, therefore, the plaintiffs have no interest in the proceeds of this insurance and are not entitled to recover in this action, being only general creditors of the carrier.

We are of the opinion that these contentions are without merit and that the learned trial court properly held that the insurance on the cargo of the barge *Alpha* was effected for the benefit of the plaintiffs as the assured under the policy. It has been shown that this was an inchoate contract of insurance. Nothing in existence was covered by it, until each particular shipment or risk was brought within its protection, under what was in effect a separate policy, by agreement as to the rate to be paid therefor. The application for marine risk on the *Alpha* is made out for $13,410, the amount of plaintiffs' invoices. When the plaintiffs' bales went on board the *Alpha*, constituting the cargo of the barge, and when such bales were insured as a separate shipment under the policy, and the premium therefor (that is, for this particular cargo) was duly paid to the insurers, as was conceded upon the trial, that insurance under the terms of the policy was for the specific benefit of plaintiffs, and a loss thereunder became payable to them, without deduction for whatever premiums upon other shipments or cargoes, belonging to other shippers, the carrier might owe to the insurer. This leads to the conclusion that plaintiffs were entitled to recover the amount of their loss directly from the insurer, and were not relegated to their claims as general creditors against the bankrupt carrier.

The judgment appealed from should, therefore, be affirmed, with costs.

CLARKE, P. J., PAGE, MERRELL and FINCH, JJ., concur.

Judgment affirmed, with costs.