GRAHAM BROTHERS AKTIEBOLAG, Plaintiff, *v.* ST. PAUL FIRE AND MARINE INSURANCE COMPANY, Defendant.

Supreme Court, New York County, February (Received March, 1924).

Insurance (marine) — insurance certificates issued by defendant in lieu of policy to plaintiff's assignor covered loss by " jettison and / or washing overboard "— automobiles, included in shipment, covered by risk, lost at sea — when defendant's contention that action was barred untenable — when plaintiff deemed holder of certificates in good faith and for value — when verdict will be directed for plaintiff.

Certain insurance certificates issued by defendant to one B., with whom for some years it had had an open policy of marine insurance, to cover the shipment by him of a number of automobiles by steamship from New York to Gothenberg, Sweden, provided that the loss, if any, should be payable to the order of B. upon the surrender of the certificates, each of which represented and took the place of the policy, for the purpose of collecting any loss or claims and transferred

**582** GRAHAM BROTHERS AKTIEBOLAG *v.* ST. PAUL F. & M. INS. CO.

Supreme Court, March, 1924. [Vol. 122

all the rights of the original policyholder as fully as if the property were covered by a special policy direct to the holder of any particular certificate and free from any liability for unpaid premiums. The risk insured covered, among other things, " jettison and / or washing overboard, irrespective of percentage." The shipment included eight automobiles consigned to plaintiff at Stockholm, Sweden, against the loss of which, through the perils insured against, the defendant had issued to B. a certificate for each of said eight automobiles. After the shipment B. drew on plaintiff by sight drafts for the amount of the invoices and discounted the same at a bank in New York city, at the same time delivering to it along with said drafts the invoices, bills of lading and the insurance certificates which were indorsed by him in blank. Upon plaintiff's acceptance of the drafts the foregoing documents came into its possession. On the voyage the steamship encountered heavy weather and a number of automobiles, including those consigned to plaintiff, were jettisoned or washed overboard. Before the commencement of an action upon a complaint seeking a recovery on each certificate, as a separate cause of action, the attorneys of the parties entered into a stipulation, in evidence, which recites the payment to B. of $9,600 on account of the loss under the certificates in question and that there is " still payable thereunder the further sum of $700, which has not yet been paid owing to the question raised " as to whether the same should be paid to B. or to plaintiff. The stipulation in terms dispensed with the filing of formal proofs of loss and of interest in the property insured, as a condition precedent to the commencement of the action. The automobiles were never delivered to plaintiff and, until the trial, defendant made no claim that they were not lost through the perils insured against, nor did the defendant offer any evidence as to whether the loss did occur. *Held,* that the plaintiff had established a *prima facie* case that said loss did occur through the perils insured against.

The certificates contained no provision limiting the time within which an action must be commenced, and while the open policy, produced on the trial by defendant, did contain such a provision, no evidence was offered which indicated that the policy had ever been in the hands of plaintiff and at no time within the year following the loss did defendant or its agents deny liability under the certificates in suit or inform plaintiff as to the time within which, by the terms of the policy, an action could be commenced, and the defense of the one-year limitation was not set up in defendant's answer. *Held,* that defendant's contention that no recovery could be had because the action was not commenced within one year from the date of the loss was untenable.

The certificates in suit covered the automobiles which plaintiff had bought and paid for, and defendant in issuing the certificates assumed an obligation direct to plaintiff as a holder in good faith and for value, and was not warranted in making payment to B. without insisting upon the production of the certificates, and under the rule that where one of two innocent parties must suffer, the loss must fall upon the defendant as being the one that made the loss possible, and a verdict will be directed in favor of plaintiff for the amount claimed, with interest.

ACTION upon marine insurance certificate for loss occasioned at sea.

*Gustav Lange, Jr.,* for plaintiff.

*Bingham, Englar & Jones (Arthur W. Clement,* of counsel), for defendant.

GLENNON, J. The complaint in this case, in which eight causes of action are set forth, is based upon certain insurance certificates issued by the defendant company, " to the order of one A. J. Berg or order." For some years A. J. Berg has had an open policy of marine insurance with the defendant company. A recovery is sought on each certificate as a separate cause of action. The certificates were issued on March 11, 1919, to cover the shipment by Berg of a number of automobiles on the steamship *Keresaspa* from New York to Gothenberg, Sweden. They provide that the loss, if any, shall be payable " to the order of A. J. Berg or order " upon the surrender of the certificate, and each certificate " represents and takes the place of the policy and conveys all the rights of the original policy holder (for the purpose of collecting any loss or claims) as fully as if the property were covered by a special policy direct to the holder of this certificate and free from any liability for unpaid premiums." The risk insured covered, among other things, " jettison and /or washing overboard, irrespective of percentage." The shipment in question included eight automobiles which were consigned to the plaintiff, a Swedish corporation at Stockholm, Sweden, against the loss of which, through the perils insured against, the defendant company had issued to Berg eight certificates, one for each of said automobiles. After the shipment Berg drew on Graham Brothers (the plaintiff) by sight drafts for the amount of the invoices and discounted the same at the Chase National Bank, New York, at the same time delivering to the bank, along with the drafts, the invoices, bills of lading and the insurance certificates. These insurance certificates were indorsed in blank by Berg. Subsequently, the drafts having been accepted by plaintiff, the foregoing documents came into its possession. On the voyage of the steamship *Keresaspa* heavy weather was encountered, in which seventeen automobiles, including the eight automobiles consigned to plaintiff, were jettisoned or washed overboard. The defendant denies any obligation to plaintiff on the claim sued upon and sets forth the following three reasons for its refusal to recognize said claim: In the first place, it contends that plaintiff has failed to establish the allegations of the complaint as to the loss of the automobiles through the perils insured against in the certificates. *Secondly,* it raises the point that, pursuant to the terms of the open policy, no recovery can be had against it because this action was not commenced within one year from the date of the loss. The third reason assigned is that it practically satisfied plaintiff's claim by a payment of $9,600 to Berg in his capacity as a partner of the plaintiff. As to the first reason assigned it seems that when the claim for loss was first presented to McGee & Co.,

584 GRAHAM BROTHERS AKTIEBOLAG *v.* ST. PAUL F. & M. INS. Co.

Supreme Court, March, 1924. [Vol. 122

the agents of the defendant, an investigation was made as to the loss of the automobiles by the perils insured against, and as a result of this investigation payment was made to Berg. Letters of inquiry from the defendant's agents to different persons and concerns and the replies thereto, written in the course of this investigation, were received in evidence. The communications were received in evidence on the theory that they constituted some evidence of an admission by the defendant after making its investigation that the automobiles were lost by being " jettisoned and / or washed overboard." Before the commencement of this action a stipulation, now in evidence, was entered into between the attorneys for the parties. This stipulation recites the payment to Berg of $9,600 on account of the loss under the certificates in question, and furthermore, that there is " still payable thereunder the further sum of $700, which has not yet been paid owing to the question raised as to whether the same should be paid to the said A. J. Berg or to Graham Brothers." By the terms of this stipulation the filing of formal proofs of loss and of interest in the property insured against with the defendant company as a condition precedent to the commencement of this action were dispensed with. There is no doubt of the fact that the automobiles were never delivered to the plaintiff. Up until the time of the trial no claim was ever made by defendant that the automobiles were not actually lost through the perils insured against. No evidence was offered by the defendant as to whether or not the loss did occur. Under the circumstances, therefore, I am constrained to hold that the plaintiff has established *prima facie* that the loss of the automobiles did in fact occur through the perils insured against. *Seidenspinner* v. *Met. Life Ins. Co.* 175 N. Y. 95. As to the second reason assigned by the defendant it must be conceded that this action was not commenced within one year from the time that the automobiles were lost. I find no provision in the certificates limiting the time in which an action must be commenced. While it is true that the so-called open policy produced upon the trial by the defendant contained such a provision, still, how is the holder of the certificates in this case to know of such limitation? There is no evidence offered which indicates that the open policy had ever been in the hands of the plaintiff. The plaintiff's agent, the National City Bank, wrote the agents of defendant on December fourth, some eight months after the loss had occurred, and forwarded to them the certificate and the shipping documents, and made claim for the insurance. No definite action on the claim seems to have been taken by the defendant. On April 28, 1920, the National City Bank again wrote defendant inquiring about the disposition of the claim,

to which an answer was made on May 18, 1920, to the effect that the matter was still under investigation. At no time within the year following the loss did defendant or its agents deny liability under the certificates or inform plaintiff of the open policy limitations to the time within which an action could be commenced. The defense of the one-year limitation was not set up in the defendant's answer. Notwithstanding that the certificate provides that the insurance is subject to the terms of the open policy, I think that a due regard for the holder's rights would require that this limitation be brought to its attention by a proper reference thereto in the certificate itself. An insurer by its conduct may waive a condition in the policy. *Syracuse Lighting Co.* v. *Maryland Casualty Co.*, 226 N. Y. 25. As to the third reason assigned by the defendant, apparently when Berg received $9,600 from the defendant he must have offered some excuse for not producing the insurance certificates. What reason Berg gave for not being the " holder " of the certificates does not appear. I think it is fair to assume Berg did not tell defendant that he was a partner of the plaintiff at the time. Indeed, the indemnity agreement entered into by Berg with the defendant company makes no reference to either a partnership or a possible claim by Graham Brothers. It would seem that the defendant had no knowledge of plaintiff's existence at the time it sought to satisfy its obligations under the certificates by the payment to Berg. There is no evidence in the record that the plaintiff made any representation, either express or implied, to the defendant company as to the partnership at the time defendant turned over $9,600 to Berg. As far as the proofs show the automobiles were bought and paid for by the plaintiff. The certificates which came into plaintiff's hands cover plaintiff's automobiles. Reference is made to the arrangement made by one Miller, an employee of the plaintiff, with Berg, for the shipment of the automobiles. The president of Graham Brothers in a deposition taken in Sweden denies that Miller had any authority to enter into a partnership agreement with Berg. Was there an agreement to share the profits which might arise out of the transaction? The letters which passed between Berg, Miller and the plaintiff do not indicate that Berg either had any property right or insurable interest in the automobiles which were lost. Miller is dead and Berg has disappeared. An agreement to share profits and losses does not always invest the parties with authority to bind each other in all things concerning the venture. *Curnen* v. *Ryan*, 187 App. Div. 6. My conclusion, therefore, is that in issuing these certificates the defendant assumed an obligation direct to the holders thereof, in good faith, for value, and that plaintiff is such holder. The

Supreme Court, March, 1924.      [Vol. 122

defendant was not warranted in making payment to Berg without insisting upon the production of the certificates. Therefore, as one of the innocent parties must suffer, the loss must fall on the defendant as being the one that made it possible. I accordingly direct a verdict in favor of plaintiff for the sum of $10,300, with interest, amounting to $2,023.95, making a total of $12,323.95. Defendant may have an exception and be allowed thirty days' stay of execution and sixty days within which to make a case.

Judgment accordingly.