GEORGE COLON & COMPANY, Appellant, *v.* COMMERCIAL CASUALTY INSURANCE COMPANY, Respondent.

First Department, May 24, 1929.

*Stanley Garten* of counsel [*Henry W. Kiralfy*, attorney], for the appellant.

*Daniel Mungall*, for the respondent.

PROSKAUER, J.  The plaintiff had a contract with the Board of Education of the city of New York to erect a high school.  It employed the firm of A. Fiore & Son as subcontractors.  The defendant gave a bond conditioned for the performance of A. Fiore & Son's contract.  It was conceded upon the trial that A. Fiore & Son did not complete the subcontract, and that the appellant did complete it at a cost exceeding the contract price by more than $5,000, the amount of defendant's bond.  Fiore admitted that he had defaulted in the performance of his contract, and the evidence is overwhelming that his cessation of work was due to his own default and not to that of the plaintiff.  Shortly after the cessation of the work the Fiore firm went into bankruptcy.  The schedules in bankruptcy contained an admission by Fiore that the appellant was a creditor for damages for breach of this contract over and above the amount of the bond.  It is clear that his firm was short of funds; there was no motive for the plaintiff to exclude

him from the work, as the plaintiff was obviously desirous of completing its contract with the board of education; no reply was made by A. Fiore & Son to the several letters of the plaintiff calling on them to perform their work. The evidence that one of the Fiores was personally removed from the building in course of construction clearly related to a time after he had himself breached the contract and taken his men away from the work.

The defense chiefly relied upon is that the action was not begun within the short period of limitation, six months, contained in the bond. This action was not begun within six months after A. Fiore & Son had been excluded from the work after their default. But plaintiff's attorney testified, without substantial contradiction, that on January 2, 1925, before the expiration of the six months period, he made a written demand upon the defendant; on January fourteenth he was informed by a representative of the defendant that " he was investigating the matter, and that he had to send for Fiore to see what he said. He said of course he could not do anything until they heard from Fiore what he had to say about it * * * that I should wait until he had a chance to get in touch with Fiore," which the witness agreed to do. On the twenty-seventh of January the same representative of the defendant stated that he had not yet heard from Fiore, but that Fiore's attorney claimed that they should resist liability. The witness thereupon said that the defendant " must not take Fiore's attorney's word for it that 98 per cent was finished, because he was very much biased, and that he should investigate further and he said he would investigate further." The plaintiff thereupon unsuccessfully endeavored to get some determination from the defendant, and finally on March fifth he was advised by a representative of the defendant that " he had nothing to say, or something like that." The summons and complaint were then immediately served upon the defendant.

On these facts the defendant must be held to have waived the clause creating the short period of limitation. (*Syracuse Lighting Co.* v. *Maryland Casualty Co.*, 226 N. Y. 25, 33; *Graham Brothers Aktiebolag* v. *St. Paul F. & M. Ins. Co.*, 122 Misc. 581, 585; 127 id. 403, 406; affd., 220 App. Div. 712.)

The respondent urges also that during the progress of the work the plaintiff paid to A. Fiore & Son more than the value of eighty-five per cent of the work completed, and that these overpayments constituted a modification of the contract to the prejudice of the surety and without the surety's consent. At the outset it is to be observed that no such defense is pleaded. Moreover, the testimony of Fiore, the defendant's witness, is replete with the charge that he was underpaid and that in consequence of such underpayment

he was hampered in the performance of his work. Moreover, the course pursued on the trial makes it unfair for the respondent to raise this question. Fifteen per cent of the entire contract price would have amounted to $4,425. Of this amount the plaintiff retained $2,788 unpaid. Fiore testified that he completed ninety per cent of the work; this would have called for a retention of $3,977. Without attempting to reconcile the conflicting claims as to amount of work done, it is apparent that the overpayment, if made, was not substantial in amount. Moreover, while the plaintiff admitted that it paid the amount of the Fiore payrolls in full, it insisted that it had adjusted these payments when it received requisitions so as to bring the payments substantially within the eighty-five per cent clause. The comparatively small amount of the over-payments, if any, may be contrasted with the items in the plaintiff's bill of particulars, which show that it had expended over $11,000 in the completion of the work. When it sought to prove this excess cost, it was met by a stipulation of the defendant " that plaintiff expended more than $5,000 over and above the contract price." By this concession plaintiff was led to refrain from giving proof which might, and probably would, have shown that its loss far exceeded the combined sum of $5,000 and any overpayment, and which would thus have tended to show that the contract was thus in fact not modified. The unpleaded defense now urged by the surety must be predicated upon evidence which goes to the length of showing that the overpayments justified the inference that there had been a modification of the contract. No such inference is possible on the evidence in this case. The payments complained of were clearly made by the plaintiff defensively in the endeavor to secure performance of the contract and not by way of modification of it. As is stated by COCHRANE, P. J., in *Village of Canton* v. *Globe Indemnity Co.* (201 App. Div. 820): " It has been held in some jurisdictions that advanced payments on a building contract may be so antagonistic to the interests of a surety as to release him from his obligation, but that doctrine has not found special favor in this State, although it is recognized that the circumstances may be such as to justify the application of the principle." And in *British American Tobacco Co., Ltd.* v. *U. S. Fidelity & Guaranty Co.* (177 App. Div. 582) SMITH, J., writes: " If the owner, to relieve the contractor's distress, had loaned to him at any time a sum of money, it would be hypercritical to hold that he had thereby lessened the incentive of the contractor to finish his contract, and thereby release the surety. These overpayments innocently made by the owner can hardly be deemed to be more prejudicial to the surety's rights."

These views flow logically from the opinion of CHASE, J., in *St. John's College* v. *Ætna Indemnity Co.* (201 N. Y. 335).

For these reasons the order and judgment appealed from should be reversed, with costs, and judgment directed for the plaintiff for the sum of $5,000, with interest from the 2d day of January, 1925, and costs.

DOWLING, P. J., MERRELL, MARTIN and O'MALLEY, JJ., concur.

Judgment and order reversed, with costs, and judgment directed for the plaintiff for the sum of $5,000, with interest from January 2, 1925, and costs. Settle order on notice.