**PRUDENCE CO., Inc., v. FIDELITY & DE-POSIT CO. OF MARYLAND et al.**

District Court, S. D. New York.
Jan. 18, 1933.

Alfred T. Davison and Orrin G. Judd, both of New York City, for plaintiff.

Thomas E. White and Joseph F. Murray, both of New York City, for defendants.

BONDY, District Judge.

This is a motion to strike from the answer certain denials as sham and frivolous and nine defenses as insufficient in law.

The action is upon a surety bond made by the defendants guaranteeing the completion of a building by the Central Park Properties, Inc., in accordance with the terms of a building loan agreement between it and the Prudence Company, Inc., the obligee named in the bond.

For a first cause of action the complaint alleges that the plaintiff and Central Park Properties, Inc., executed a building loan agreement by which the plaintiff agreed to

lend to Central Park Properties, Inc., $6,650,-000, to be secured by a first mortgage on certain real estate and the building to be erected thereon; that the defendants executed and delivered to the plaintiff the bond in suit in the sum of $3,000,000, pursuant to the provisions of the building loan agreement, which was incorporated in the bond by reference, conditioned upon the completion of the building on or before December 16, 1930, in accordance with the terms of the building loan agreement. It alleges that the plaintiff advanced the full amount of the loan, but that Central Park Properties, Inc., failed to complete the building on December 16, 1930, and abandoned the completion of the building on December 23, 1930; that the plaintiff, in accordance with the provisions of the building loan agreement, completed the building with damage to the plaintiff, including the loss of interest, cost of completion and taxes, amounting to $788,676.94.

For a second cause of action, the complaint alleges the same facts, and in addition thereto recites that, in proceedings brought by the plaintiff to foreclose its mortgage, the premises were sold for less than the amount of the mortgage and expenses of foreclosure, and that a deficiency judgment was rendered therein for $716,215.02; that, had the building been completed in accordance with the terms of the building loan agreement, the value of the premises would have been so much in excess of $6,650,000 that the plaintiff upon the foreclosure of the mortgage would have realized the full amount of the principal and interest due it, over and above the expenses of foreclosure; that the deficiency judgment and other items of damage set forth amount to $950,706.68, for which sum and interest plaintiff demands judgment.

It has been stipulated that the agreement and surety bond may "be submitted and considered by the court to the same extent and effect as though the same were duly offered and admitted in evidence on a trial herein, and to the same extent and effect as if the same had been set forth in the pleadings herein. * * *" The provisions of the instruments so incorporated in the pleadings accordingly will control wherever inconsistent with any allegations contained therein.

Since the denials against which the motion was directed simply raise questions as to the actual terms of the building loan agreement, this stipulation and a further express agreement by the parties make it unnecessary to consider them.

The second defense is the most comprehensive, and presents questions which are involved in several of the other defenses. It therefore is considered first.

It is alleged that the building loan agreement provided that the plaintiff would make a first advance of $3,250,000 at the time of closing; that the remaining $3,250,000 [$3,-400,000?] should be paid in installments on the basis of 75 per cent. of the labor and materials installed in the building, and that the other 25 per cent. would be paid to Central Park Properties, Inc., as a final advance; that the building loan agreement further provided that no advance would be due and payable unless all work usually done at the stage of construction when the advance was applied for had been done in a good and workmanlike manner and all materials and fixtures usually installed at such stage of construction had been installed; that on December 5, 1930, the plaintiff had in its possession as and for the final advance only $300,000 instead of $812,500, and that on said date the plaintiff made the final advance of $300,000 to Central Park Properties, Inc., although to the knowledge of the plaintiff all work usually done at such stage had not been done in a good and workmanlike manner, and all the materials and fixtures usually installed at such stage had not been installed.

The provisions of the agreement upon which the defendants rely are contained in paragraphs "Ninth" and "Nineteenth" thereof. Paragraph "Ninth" provides in part: "No advance shall be due unless all work usually done at the stage of construction when the advance is applied for be done in a good and workmanlike manner, and all materials and fixtures usually furnished and installed at such stage of construction be furnished and installed. * * *"

Paragraph "Nineteenth," after reciting the first advance of $3,250,000, provides in part: "All subsequent advances shall be made by the Lender to the Borrower on the basis of seventy-five per cent. of the value of the labor and materials installed and incorporated in the construction of the building * * * as determined by the appraisers of the Lender."

The plaintiff contends that these provisions did not limit its discretion in making advances in view of the provisions of paragraph "Third," "Said loan is to be advanced in such amounts and at such times as Lender approves," and of paragraph "Ninth," "Advances may be made as and when the Lender or holder of the mortgage believes it advisable so to do, and all such advances or pay-

ments shall be deemed to have been made in pursuance of this agreement and not in modification thereof."

Defendants contend that these provisions cannot be reconciled, and that the conflict should be resolved in their favor because the provision for the payments on a basis of 75 per cent. of the value of the work and material installed is typewritten and the others are printed, and because the plaintiff drew the agreement.

■ The defendants fail to take into account that they are compensated sureties, and insurers within the rule that ambiguities in insurance contracts must be construed in favor of the insured. See Pickens County v. National Surety Co. (C. C. A.) 13 F.(2d) 758, 762; Van Buren County v. American Surety Co., 137 Iowa, 490, 115 N. W. 24, 126 Am. St. Rep. 290; Brandrup v. Empire State Surety Co., 111 Minn. 376, 127 N. W. 424.

■ There is not any irreconcilable conflict between terms providing when an advance shall become due and payable and when the lender accordingly must make an advance, and terms providing that the lender may at his discretion make an advance, although not otherwise due and payable. The fact that the provision for payment on a 75 per cent. basis is typewritten therefore does not nullify the provisions giving the lender discretion in making advances.

■ The provision making advances depend upon the stage of construction and the provision permitting advances to be made when the lender deems it advisable so to do are contained in the same paragraph. This in itself is convincing evidence that the parties considered them consistent. The fact that the former provision begins "No advance *shall be due*" and the latter "Advances *may be made*" establishes the nature of the reconciliation, and clearly indicates a distinction between the plaintiff's obligation to make advances when due and payable under the express terms of the agreement and its privilege to do so prior thereto.

Defendant's contention that plaintiff was under an obligation to retain a certain percentage of the loan until final completion moreover is inconsistent with the provision of paragraph "Third" of the building loan agreement, which states: "Interest on the full principal amount shall run from the date herein fixed for completion * * * unless the full amount shall be previously advanced. * * *" This indicates that the parties contemplated the possible advance of the full amount before completion.

■ Even assuming, however, that the provision that advances are to be made "on the basis of seventy-five per cent. of the value of labor and materials installed" limited plaintiff's discretion in making advances, the defense is insufficient, in the absence of an allegation that advances were made beyond 75 per cent. of the value of labor and materials installed in the building. An allegation that 25 per cent. of the amount of the loan was not retained is insufficient. The limitation of advances to 75 per cent. of the amount of the labor and materials is not the same as a limitation to 75 per cent. of the amount of the loan. British-American Tobacco Co., Ltd., v. U. S. Fidelity & Guaranty Co., 177 App. Div. 582, 164 N. Y. S. 406.

■ Moreover, no defense is stated in the absence of an allegation that the defendants were actually prejudiced by premature advances. Globe Indemnity Co. v. Southern Pacific Co. (C. C. A.) 30 F.(2d) 580; Pickens County v. National Surety Co. (C. C. A.) 13 F.(2d) 758; Village of Canton v. Globe Indemnity Co., 201 App. Div. 820, 195 N. Y. S. 445; Colon & Co. v. Commercial Casualty Insurance Co., 226 App. Div. 525, 528, 234 N. Y. S. 631, affirmed 252 N. Y. 565, 170 N. E. 145.

■ A surety is released only to the extent of its damage, and, if this is less than the amount sued for, the defense must be designated as a partial defense. Houston v. Coombs, 224 App. Div. 396, 231 N. Y. S. 176; New York Civil Practice Act, § 262.

■ The first defense alleges that the agreement provided that the building should be completed and ready for occupancy not later than December 16, 1930; that on December 5, 1930, the building was in a state of construction where it would have required a sum in excess of $170,000 to complete and make ready for occupancy, and that there were omissions of labor and materials from, and substitutions of inferior materials in, the building amounting in value to a sum in excess of $230,000; that on the same day the plaintiff, with knowledge of these facts, made a full and final payment of $300,000 to Central Park Properties, Inc., and thereby released and discharged the defendants from liability under the bond. It does not allege facts showing that on December 5, 1930, the building could in no event have been completed in accordance with the terms of the

contract, and that the plaintiff, knowing that the principal on the bond must default, nevertheless made the final advance of $300,000. A defense alleging such facts would import a payment made in bad faith, and might be valid. See Patterson v. Meyerhofer, 204 N. Y. 96, 100, 97 N. E. 472. The defense actually alleged, however, is insufficient.

The third defense alleges that the agreement provided that the building should be completed and ready for occupancy not later than December 16, 1930; that on December 5, 1930, the plaintiff owed to the defendants the duty of reserving enough of the money then in its possession to assure the completion of the building; that on December 5, 1930, plaintiff paid Central Park Properties, Inc., $300,000; said sum being sufficient to complete the building and make it ready for occupancy.

The chief reason for the insufficiency of this defense is the absence of any provision in the agreement imposing any duty of the kind alleged, as has been pointed out. Moreover, the defense shows no violation even of the duty alleged, there being no allegation that the sum advanced was a final one, nor that the building could not be completed and made ready for occupancy by December 16, 1930.

The fourth defense alleges that the bond provided that plaintiff would deliver to defendants written notice of any default of the principal within thirty days after two executive officers should have actual notice thereof; that on or about December 16, 1930, two executive officers of plaintiff had actual notice of the default, but failed to give defendants notice as provided for by the bond.

No damage or prejudice is alleged. Violation of conditions requiring notice of default to be given to compensated sureties does not discharge the surety, unless it is damaged thereby, and even then only to the extent that it has been damaged, unless the provision requiring such notice is made a condition precedent to the surety's liability. Southern Surety Co. v. MacMillan Co. (C. C. A.) 58 F. (2d) 541; New Amsterdam Casualty Co. v. United States Shipping Board Emergency Fleet Corp. (C. C. A.) 16 F. (2d) 847; Barhydt v. Ellis, 45 N. Y. 107.

The construction resulting in a condition is not favored. In any case, when the provision is expressly designated a covenant, this construction will be adopted. National Surety Co. v. Long (C. C. A.) 125 F. 887. The provision relied on by defendants is one of a group in the bond, all introduced by the words prominently printed in capital letters: "And the Principal and Surety Jointly and Severally Covenant and Agree with the Obligee as Follows." Use of the word "covenant" derives added significance from the fact that the bond by express language clearly indicates the distinction between the covenants and conditions therein.

This defense is designated a complete one. Even if the defendants were damaged, the defense should be designated a partial one, unless the damage equalled the amount sued for.

The fifth defense alleges that the bond provided that the plaintiff would retain from the total amount agreed to be advanced sufficient money with which the building might be completed in the event of the default of Central Park Properties, Inc., and the plaintiff agreed that, in the event of any such default, it would place at the disposal of the defendants such unadvanced amounts of money as would have been receivable by Central Park Properties, Inc., if the latter had not committed any default; that on December 16, 1930, when the default occurred, there was no money in plaintiff's hands which was applicable to the completion of said building.

Plaintiff's discretion was not thus limited, as has already been pointed out. The provision of the bond referred to gives defendants power, within twenty days after receipt of notice of the principal's default, "to diligently proceed with or procure others to proceed with the construction and completion of said building. * * * And the Principal and Obligee agree that in the event the Surety exercises such right, then the Obligee shall * * * place at the disposal of the Surety for its use in the exercise of such right, unadvanced amounts of money which would have been receivable by the Principal from the Obligee under said building loan. * * *" This is an agreement to place at defendants' disposal sums which have not been advanced, and not a promise as alleged that there will, at any given time, be unadvanced sums in plaintiff's possession. This is made even clearer in the sentence immediately following the one quoted from: "The amounts of money which may be payable by the Obligee to the Surety in any contingency pursuant to the provisions of this paragraph are expressly limited to the amounts not theretofore advanced or applied by the Obligee under said building loan. * * *"

The seventh defense alleges that the building loan agreement provided that the final advance would not be due and payable until

Central Park Properties, Inc., had obtained and delivered to the plaintiff a certificate of completion issued by the building department of the city of New York, but that the final advance was made without such certificate having been obtained and delivered to the plaintiff.

The provision relied on appears in paragraph "Ninth" of the agreement, and is as follows: "No advance shall be due unless all work usually done at the stage of construction when the advance is applied for be done in a good and workmanlike manner, and all material and fixtures usually furnished and installed at such stage of construction be furnished and installed, the final advance shall not be due and payable until the Borrower shall obtain and deliver to the Lender the usual certificate of completion issued by the Building Department. * * * "

Immediately following this we find: "Advances may be made as and when the Lender or holder of the mortgage believes it advisable so to do, and all such advances or payments shall be deemed to have been made in pursuance of this agreement and not in modification thereof."

As heretofore stated, the agreement provides for the time when, and the conditions upon which, advances should become due and payable, and additionally gives the plaintiff the privilege to make advances, though not due and payable under the agreement. The provision relied on does not limit the lender's discretion in making advances.

The eighth defense alleges that the building loan agreement provided that all advances by plaintiff to Central Park Properties, Inc., would be made after application by the latter, which application should set forth the work incorporated to the date of the application, together with the cost of each item, but that this was not done.

This provision likewise is contained in the "Ninth" paragraph, which gives the plaintiff the privilege to make advances, though not otherwise due and payable.

[11] The ninth defense, designated a partial one, alleges that on December 5, 1930, plaintiff and Central Park Properties, Inc., agreed that all the work required to complete the building could be done for $75,000; that plaintiff made a final advance of $300,000 to Central Park Properties, Inc., and the latter deposited with the plaintiff $75,000; that plaintiff should have applied this $75,000 to the completion of the building, but instead applied it on account of the principal or interest which became due on the mortgage.

In paragraph "Ninth" of the building loan agreement, it is provided that: "The Lender may apply any part of any advance in payment of interest or taxes due, and the amount so applied shall be deemed advanced to the Borrower."

The principal owed only one debt to the plaintiff. The defense alleges the application of the money to this debt. No question of application of payments is involved.

Even assuming the correctness of defendants' construction, the defense, not being confined to either of the causes of action, must be stricken out on motion, because in no case could it constitute a defense to the second cause of action. Price v. Derbyshire Coffee Co., 128 App. Div. 472, 112 N. Y. S. 830; Meyer v. Central Railroad Co. of New Jersey, 185 App. Div. 812, 174 N. Y. S. 93; Browning, King & Co. v. Terwilliger, 144 App. Div. 516, 129 N. Y. S. 431; New York Civil Practice Act, § 262.

The tenth defense, also designated a partial one, alleges that the omission of items and the substitutions of inferior materials referred to in the complaint (constituting damage in the sum of $228,722.78) were made with the knowledge and approval of the plaintiff, and that plaintiff waived strict performance of the building loan agreement with reference thereto.

Plaintiff concedes that this defense would be sufficient were it not for the fact that "the allegations of the defense are capable of being supported by the knowledge or silent acquiescence on the part of the plaintiff."

The defense alleges plaintiff's knowledge and approval as a conclusion of fact, and accordingly is sufficient. We are not here concerned with the evidence which would be relevant to support it.

The motion accordingly is granted as to the first, second, third, fourth, fifth, seventh, eighth, and ninth defenses, and denied as to the tenth.