AMERICAN FABRICS COMPANY, Plaintiff, *v.* WALTER S. BENEDICT
and Others, Doing Business under the Firm Name and Style of
BENEDICT & BENEDICT, WALLACE R. FOSTER, the BRIDGEPORT-
NEW YORK STEAMSHIP COMPANY, the HOME INSURANCE COMPANY
and Another, Defendants.

Supreme Court, Trial Term, New York County, December 22, 1937.

*Rumsey & Barker* [*W. C. Morris* of counsel], for the plaintiff.

*Macklin, Brown, Lenahan & Speer* [*R. F. Lenahan* of counsel], for the defendants Benedict & Benedict and the Home Insurance Company.

*G. Thomas* [*F. W. Holmes* of counsel], for the defendant Wallace R. Foster.

POLETTI, J.. On January 31, 1925, the steam lighter *Winceco*, owned by the defendant Bridgeport-New York Steamship Com-

pany (hereinafter called the steamship company), left Bridgeport, Conn., with a cargo of general merchandise bound for New York. While proceeding down the East river on that day she struck an iron pipe, believed to be a drill casing, which pierced her bottom. A large portion of the cargo, including the entire shipment of the plaintiff, American Fabrics Company, became water soaked and damaged.

By an open cover policy of insurance, dated December 4, 1924, and procured for the steamship company by the defendants Benedict & Benedict, insurance brokers (hereinafter called brokers), the defendant Home Insurance Company had insured " the Bridgeport-New York Steamship Company and/or as agents, as freighters, forwarders, bailees, common carriers, or for account of whom it may concern: loss, if any, payable to the order of assured or order $25,000 on goods, wares and merchandise * * * against all loss, damage, detriment or hurt by fire and any and all the other risks, perils and dangers." By indorsement, dated January 27, 1925, this policy was amended so as to cover the steam lighter *Winceco* for a period commencing at noon on that day.

A survey of the accident was made and a report, dated May 5, 1925, was submitted to the brokers. From this report the brokers obtained the names of the parties interested in the cargo that was aboard the lighter, the invoices covering the value of the cargo, and the statements of labor and charges incurred in handling the cargo and disposing of it for salvage. Proofs of loss were then submitted by the brokers to the insurance company. The documents constituting the proofs of loss showed the plaintiff's loss, among others, to amount to $4,006.74. This loss was adjusted at that figure less salvage of $765.65, or a net amount of $3,241.09. By reason of a concurrent insurance clause in the policy the insurance company conceded its liability only to the extent of one-half of the total loss.

On August 8, 1925, it delivered to the brokers a draft for $3,015.86 to the order of " Bridgeport-New York Steamship Company * * * in full satisfaction of all claims and demands for loss and damage * * * to the property insured " under this policy. The amount of this draft included one-half of plaintiff's adjusted loss as well as one-half of all other losses suffered in the accident. The draft was turned over by the brokers to the steamship company, which, however, failed to pay the plaintiff any part of it, but instead converted the entire amount to its own use.

The plaintiff now brings this suit against the insurance company, the individual defendants composing the insurance brokerage firm of Benedict & Benedict, the steamship company, Wallace R. Foster,

who was a director of the steamship company, and Robert C. Bennet, who was an officer of the steamship company. Service was made, however, only on the insurance company, the brokers, and Foster, and the trial proceeded, a jury having been waived as well as findings of fact and conclusions of law, against those defendants alone.

The theory of the plaintiff's case against the insurance company is that under this policy of marine insurance the plaintiff, by virtue of the clause "for account of whom it may concern," was the insured, that the insurance company had notice of the plaintiff's interest, and that payment to any one other than the plaintiff, not consented to by it, was improper and at the insurance company's peril. As against the brokers, the plaintiff proceeds on the theory of money had and received to the plaintiff's use, which was improperly turned over by them to the steamship company, and that in so doing, with knowledge that part of the fund belonged to the plaintiff, the brokers facilitated a conversion. Foster is said in the complaint to be liable on the theory of money had and received.

None of these contentions in the court's view can prevail. The paramount issue, the decision of which will make it unnecessary to pass on the other points raised by the defendants, such as the short statute of limitations, is whether the payment to the steamship company by a draft payable to its order was in compliance with the terms of the policy, and thus a proper payment.

The type of policy here involved and the use of the phrase "for account of whom it may concern" is not uncommon. On the contrary, it is much used in mercantile practice to indemnify one who holds another's goods as carrier, bailee, freighter, warehouseman, wharfinger, or in a similar agency relationship, where at the time of writing the policy the identity of the owner of the goods cannot be known. And under such policies it has invariably been decided that the carrier or the warehouseman or the wharfinger may maintain an action on the policy in his own name, to recover the full amount of the loss, and out of the recovery pay to himself the extent of his interest and hold the balance in trust for the various individual owners of the goods in his possession. (*The Commander-in-Chief*, 1 Wall. 43; *The City of Paris*, Fed. Cas. No. 2,766; *Home Ins. Co.* v. *Baltimore Warehouse Co.*, 93 U. S. 527; *California Ins. Co.* v. *Union Compress Co.*, 133 id. 387; *Gross* v. *New York & T. S. S. Co.*, [D. C.] 107 Fed. 516; *Pennefeather* v. *Baltimore Steam-Packet Co.*, [C. C.] 58 id. 481; *Duncan* v. *China Mut. Ins. Co.*, 129 N. Y. 237; *Symmers* v. *Carroll*, 207 id. 632; *Sturm* v. *Atlantic Mutual Ins. Co.*, 38 N. Y. Super. Ct. 281; *Hughes* v. *Mercantile Mut. Ins. Co.*, 44 How. Pr. 351;

*Exton & Co.* v. *Home Fire & Marine Ins. Co.,* 249 N. Y. 258; *Home Ins. Co.* v. *Minneapolis, St. P. & S. S. M. Railway Co.,* 71 Minn. 296; 74 N. W. 140; 5 Joyce Ins. [2d ed.] 5976.)

In the construction of such instruments in general use in the mercantile world care must be taken that the construction adopted does not depart from actual custom and practice. (Cf. Marine Insurance Act 1906 [6 Edw. VII], chap. 41, § 87.) Not only the usual practice but any reasonable interpretation of the terms of this policy compels the conclusion that the intention of all parties was that the loss was to be adjusted and the amount paid to the steamship company, then to be distributed by it to the various shippers. (*Wilson & Co., Inc.,* v. *Hartford Fire Ins. Co.,* 190 App. Div. 506,) In fact, it has been said that "to 'carry insurance' in the mode here pursued, imports the duty to make and *collect* the insurance or answer for not doing so." (*Gross* v. *New York & T. Steamship Co.,* [D. C.] 107 F. 516, 525.) (Italics mine.)

This custom is apparently so established that the court may presume the plaintiff's knowledge of it. Additionally, however, it appears that the plaintiff actually took pains to facilitate this method of payment. Reference is made to the correspondence that passed between the Connecticut attorneys for the plaintiff and the defendant Foster in 1925; particularly to the letter, dated October 6, 1925, which patently demonstrates that the plaintiff knew, before the insurance company paid the loss, that it was going to be paid to the steamship company and that the plaintiff acquiesced in that manner of payment, relying on the statement of an officer of the steamship company that the money would be paid over when collected. In fact, it appears that the plaintiff turned over to the steamship company orders for the direct payment of the insurance. Such knowledge and acquiescence on the plaintiff's part effectively bars it from forcing the insurance company to pay over again. (*Stewart* v. *Aberdein,* 1838, 4 Mees. & W. 211.)

Clearly, then, if the steamship company was a proper party to enforce payment of the entire amount of the policy, payment to it would be in compliance with the policy provisions and would thus constitute a discharge of the insurance company.

It is no doubt true that by proper demand the plaintiff could have compelled the insurance company to pay directly to it as the beneficiary of the policy. (*Young* v. *St. Paul Fire & Marine Ins. Co.,* 204 App. Div. 807; 5 Joyce Ins. [2d ed.] 5976.) Although its letter of June 13, 1925, made inquiry as to the status of the claim, it contained no demand whatever for direct payment. Having failed to make such a demand and having, as indicated, actually acquiesced in and facilitated the payment to the steamship company on its

behalf, it cannot now claim that such payment was in derogation of its rights.

It is, of course, to be noted that there is not the slightest intimation that either the insurance company or the brokers knew or had any reason to believe that the steamship company intended to violate its trust duty by converting the entire fund to its own use. (Cf. *National Surety Co.* v. *Manhattan Mortgage Co.*, 185 App. Div. 733.) Obviously, mere notice of the plaintiff's identity as one of the shippers would not impute knowledge of such character to the insurance company. In the issuance of every policy of this type the insurance company knows that some goods insured are held only on bailment and that some one other than the carrier or warehouseman is the real owner of the goods and the ultimate beneficiary of the policy. Yet such knowledge has never been held to affect the carrier's or the warehouseman's right to collect the entire proceeds of the policy and the insurance company's correlative duty to pay the entire proceeds to the carrier or warehouseman. It seems clear that the additional knowledge of the shipper's identity would similarly have no effect on this right and duty.

The absence of any proof that the insurance company knew of, or had reason to believe, that there might be an intended conversion, renders wholly inapposite such authorities cited by the plaintiff as *Cromwell* v. *Brooklyn Fire Ins. Co.* (44 N. Y. 42) and *Hathaway* v. *Orient Ins. Co.* (134 id. 409). In those and similar cases there was present a dispute over the insurance fund sufficient to put the insurance company on notice that payment to one only of the contesting parties would be at its peril. Obviously, the cases of payment to an assignor after notice of the assignment are not applicable. In such cases the assignor has no right to enforce payment, and there is, hence, no correlative duty to pay in that manner. *Graham Bros. Aktiebolag* v. *St. Paul Fire & Marine Ins. Co.* (122 Misc. 581) contains an element not present in the instant case, which effectively serves to distinguish it. There, certificates of insurance had been issued to the owner of the property and the policy did not permit payment without a surrender of those certificates which when issued had taken the place of the policy. The same case (127 Misc. 403) went off on the ground that the joint venture between Berg and the plaintiff did not amount to a partnership so as to constitute Berg the plaintiff's agent to receive payment of the certificates. The only question presented in *Exton & Co.* v. *Home Fire & Marine Ins. Co.* (249 N. Y. 258) and *Utica Canning Co.* v. *Home Ins. Co.* (132 App. Div. 420) was whether goods held on bailment came within the protection of a " trust or commission " clause. These and other authorities cited do not aid the plaintiff.

The court, therefore, concludes that payment to the steamship company was made to a party entitled to enforce such payment, that it was in compliance with the provisions of the policy, and that it consequently operated as a discharge of the insurance company's liability. Moreover, it is clear that the plaintiff knew that payment of its claim in this fashion was contemplated and acquiesced therein. *A fortiori*, neither the brokers nor the defendant Foster may be held liable.

Judgment must, therefore, be rendered in favor of the defendants.